STATE OF NORTH CAROLINA v. MICHAEL SCOTT KIRBY, Defendant

No. COA06-1593

(Filed 4 December 2007)

**1. Constitutional Law— effective assistance of counsel—failure to renew objection**

The defendant in a first-degree murder prosecution could not show ineffective assistance of counsel from his counsel's failure to renew his objection to inculpatory testimony from his wife after his motion in limine was denied. The testimony was admissible in that it related a statement made by defendant in the presence of a third party and was thus not a confidential statement.

**2. Homicide— sufficiency of evidence—specific intent to kill**

The trial court did not err by denying defendant's motion to dismiss a first-degree murder charge for insufficient evidence of the specific intent to kill. Proof of premeditation and deliberation is also proof of intent to kill, and the State presented evidence of most of the circumstances for proving premeditation and deliberation by circumstantial evidence.

**3. Criminal Law— prosecutor's closing argument—charges against accessory—argument accurate**

There was no plain error in a prosecution for first-degree murder where the trial court did not intervene during the State's closing argument that an alleged accessory would be tried on another day and needed to be held just as responsible as defendant. The statements in the argument were accurate.

**4. Criminal Law— prosecutor's closing argument—testimony from accessory—not personal opinion**

There was no plain error in a first-degree murder prosecution where the trial court did not intervene in the prosecutor's closing argument concerning an accessory. Although defendant contended that the prosecutor's statements amounted to personal opinion, the prosecutor simply asked the jurors to take into account their observations of the physical characteristics and courtroom behavior of defendant and the accessory in determining the credibility of defendant's contention that the accessory was the ringleader.

Appeal by defendant from judgment entered 7 June 2006 by Judge C. Phillip Ginn in Rutherford County Superior Court. Heard in the Court of Appeals 22 August 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Steven F. Bryant, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for defendant-appellant.*

GEER, Judge.

Defendant Michael Scott Kirby appeals from a conviction of first degree murder. On appeal, defendant primarily argues that he was denied effective assistance of counsel when his trial counsel—although having made a motion *in limine*—failed to object to the admissibility, under N.C. Gen. Stat. § 8-57 (2005), of testimony from defendant's wife. We hold that this testimony did not involve a confidential communication since it was made within the hearing of a third person. Therefore, this testimony was admissible, and defendant was not denied effective assistance of counsel.

STATE v. KIRBY

[187 N.C. App. 367 (2007)]

## Facts

The State's evidence tended to show the following facts. The 54-year-old victim, Bobby Dean Kirby, also known as "Buster," lived with defendant and defendant's wife, Wendy Kirby, from mid-2004 until his death on 3 February 2005. Defendant and his wife had an 18-month-old child and also cared for defendant's 15-year-old nephew, D.K. In February 2005, defendant and his wife also allowed Cecil Henson to stay with them for a few weeks.

On 3 February 2005, Wendy drove defendant, Cecil, and Buster in her van to pick up some of Cecil's clothes from his home. Defendant sat in the front passenger seat, while Cecil and Buster sat in the middle row behind Wendy and defendant. Each of the three men was drinking alcohol and became increasingly intoxicated as the night progressed.

During the ride, defendant described an incident in which Buster had taken advantage of a woman while she was sleeping. Cecil became upset by this story, and Cecil and defendant both hit Buster. Subsequently, defendant and Cecil continued to hit Buster because he kept falling asleep and, as a result, was "wast[ing] good liquor."

Sometime between 4:00 and 5:00 a.m., the group returned to defendant's home. When the group arrived home, defendant's nephew, who had been watching the baby, began getting ready for school. As D.K. was leaving for school, defendant told him to "[t]ell Buster bye, he won't be here when you get home from school this afternoon."

Wendy took the baby into her bedroom, which was adjacent to the living room, leaving defendant, Cecil, and Buster in the living room. She heard defendant telling Buster to say his prayers and then heard "gasping sounds" coming from the living room. Soon after, defendant "flung" open the bedroom door and, standing just inside the opened door, "yell[ed]" to Wendy, "Get up, I think I've killed him." Wendy entered the living room and found Buster lying dead on the floor. She told defendant that he should call the police, but defendant refused, stating: "I can't, I've stabbed him. I can't call the law. I've stabbed him in the leg."

At this point, defendant and Cecil agreed not to call the police. Defendant threatened to harm Wendy if she called the police and told Cecil to keep an eye on her. Defendant then directed Wendy and Cecil to take Buster's body across the street and bury it in the woods.

Defendant went to distract a neighbor so that they could drag the body across the street unnoticed. In accordance with the plan, Wendy and Cecil grabbed shovels, took the body across the street, and buried Buster's corpse. Defendant then instructed everyone to burn their clothing. At a later date, however, Cecil turned himself into the police and told law enforcement that defendant had killed Buster. Wendy subsequently admitted helping to bury the body.

On 14 February 2005, Dr. Amy Tharp conducted an autopsy of Buster's body and noted that Buster had injuries consistent with being struck by a blunt instrument, including a fist or a boot. He had also sustained bleeding and swelling of the brain and a fractured Adam's apple. In her opinion, the cause of death was due to "a combination of blunt trauma to the head and the abdomen as well as strangulation injuries to the neck."

On 28 March 2005, defendant was indicted for first degree murder. Following a trial in the Rutherford County Superior Court, a jury found defendant guilty of that charge. The trial court imposed a sentence of life imprisonment without parole, and defendant timely appealed to this Court. Defendant has also filed a motion for appropriate relief in this Court, asserting a claim of ineffective assistance of counsel.

I

[1] Defendant first argues that the trial court erred in admitting Wendy's testimony regarding defendant's statement to her: "Get up, I think I've killed him." Defendant contends that this testimony should have been excluded under N.C. Gen. Stat. § 8-57(c), which provides: "No husband or wife shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage."

Defendant's trial counsel filed a motion *in limine* seeking to exclude Wendy's testimony under the marital privilege. After conducting a voir dire hearing, the trial court denied the motion. At trial, defendant did not renew his objection during Wendy's testimony regarding the challenged statement. Although the affidavit of defendant's trial counsel, filed in support of the motion for appropriate relief, indicates that counsel was relying upon amended N.C.R. Evid. 103 when not renewing his objection,[1] this Court held

---

1. Rule 103(a)(2) states: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."

in *State v. Tutt*, 171 N.C. App. 518, 521, 615 S.E.2d 688, 690-91 (2005), that the amendment to Rule 103 constituted a violation of the Separation of Powers Doctrine because it conflicts with N.C.R. App. P. 10(b)(1). Our Supreme Court has recently adopted the reasoning of *Tutt*, with the result that the rule continues to be "that a trial court's evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007).

Defendant acknowledges that the issue was not properly preserved and argues in his motion for appropriate relief that the failure to renew the objection constituted ineffective assistance of counsel. Alternatively, defendant asks this Court to invoke Rule 2 of the Rules of Appellate Procedure to review this issue. Defendant did not assign or argue plain error.

In order to prevail on an ineffective assistance of counsel claim,

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (emphasis omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)). Because we conclude that the trial court properly admitted Wendy's testimony, defendant cannot show that he was prejudiced by trial counsel's error in failing to renew his objection.

As noted previously by this Court, "our Supreme Court has interpreted section 8-57 to mean that a [sic] 'spouses shall be incompetent to testify against one another in a criminal proceeding *only if the substance of the testimony concerns a* "confidential communication" between the marriage partners made during the duration of their marriage.'" *State v. Hammonds*, 141 N.C. App. 152, 169-70, 541 S.E.2d 166, 179 (2000) (quoting *State v. Freeman*, 302 N.C. 591, 596, 276 S.E.2d 450, 453 (1981)), *appeal dismissed and disc. review denied in part*, 353 N.C. 529, 549 S.E.2d 860, *aff'd in part*, 354 N.C. 353, 554

S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184, 122 S. Ct. 2363 (2002). This rule "allows marriage partners to speak freely to each other in confidence without fear of being thereafter confronted with the confession in litigation. However, by confining the spousal disqualification to testimony involving 'confidential communications' within the marriage, we prohibit the accused spouse from employing the common law rule solely to inhibit the administration of justice." *Freeman*, 302 N.C. at 596, 276 S.E.2d at 453-54.

Because of the requirement of confidentiality, it is well established that the marital privilege does not apply to communications made within the known hearing of a third party. *See, e.g., State v. Gladden*, 168 N.C. App. 548, 553, 608 S.E.2d 93, 96 ("[D]efendant was informed prior to making the phone call that all calls made to outside parties were subject to recording and monitoring. Under these circumstances, the conversation between defendant and his wife was not confidential."), *appeal dismissed and disc. review denied*, 359 N.C. 638, 614 S.E.2d 312 (2005); *State v. Carter*, 156 N.C. App. 446, 457-58, 577 S.E.2d 640, 647 (2003) (" 'The [marital] privilege is waived in criminal cases where the conversation is overheard by a third person.' " (quoting *State v. Harvell*, 45 N.C. App. 243, 249, 262 S.E.2d 850, 854, *appeal dismissed and disc. review denied*, 300 N.C. 200, 269 S.E.2d 626 (1980))), *cert. denied*, 358 N.C. 547 (2004), *cert. denied*, 543 U.S. 1058, 160 L. Ed. 2d 784, 125 S. Ct. 868 (2005); *State v. Setzer*, 42 N.C. App. 98, 104, 256 S.E.2d 485, 489 (holding that "communication here was not confidential, since it was made within the hearing of a third party"), *cert. denied*, 298 N.C. 571, 261 S.E.2d 127 (1979).

In this case, Wendy testified that she was in her bedroom with the door closed. She described the circumstances of the communication as follows: "And then [defendant] comes in, flings the door open and yells at me, 'Get up, I think I've killed him.' " She described her husband's tone of voice as "a loud one." She testified that because defendant was "that loud," someone in the living room could have heard defendant. She specified that "[h]e yelled loud enough to where anyone in the house could have heard him." It is undisputed that Cecil Henson was in the living room at the time of the statement. Wendy confirmed that Cecil was in a position to have heard the statement.

Although defendant states that "it is clear that [he] intended to speak to his wife in confidence," we find this assertion untenable in light of the evidence that defendant "yell[ed]" or "hollered" the statement while standing in the bedroom's open doorway right next to

the living room. Defendant's volume in conjunction with his undisputed knowledge that Cecil was within easy hearing distance establishes a lack of confidentiality that supports the trial court's determination that the communication was not privileged. *See State v. McMorrow*, 314 N.W.2d 287, 292 (N.D. 1982) (holding that trial court properly concluded that marital privilege did not apply when it determined that defendant "could not have reasonably believed that the conversation between his wife and himself would not be overheard by [the third party]" given that statement was made in a voice that could be easily heard by third party, and defendant had knowledge of third party's presence).

Defendant further argues, however, that only the third party— Cecil Henson—and not the spouse could testify as to the statement. Defendant's sole authority for this proposition are cases decided in 1918 and 1929—decisions rendered at a time when spouses were deemed incompetent to testify against each other in a criminal proceeding. *Freeman*, decided in 1981, modified the common law rule so that "spouses shall be incompetent to testify against one another in a criminal proceeding *only if* the substance of the testimony concerns a 'confidential communication' between the marriage partners made during the duration of their marriage." *Freeman*, 302 N.C. at 596, 276 S.E.2d at 453 (emphasis added). Indeed, *Freeman* specifically held that testimony *by the spouse* regarding communications made in the presence of the spouse's brother involved "no confidential communication which would render [the testimony] incompetent under the rule established in this case." *Id.* at 598, 276 S.E.2d at 454-55. Based on *Freeman*, Wendy was competent to testify regarding defendant's statement since it was not made confidentially. *Compare State v. Holmes*, 330 N.C. 826, 835, 412 S.E.2d 660, 665 (1992) (holding that trial court erred in allowing wife to testify as to defendant's intent to kill victim when evidence—that defendant instructed two other men with him to go outside the house because he wanted to talk to his wife—showed that defendant's statements, "made only in the presence of his wife, were induced by the confidence of the martial relationship").

We, therefore, hold that the trial court did not err in admitting Wendy's testimony regarding defendant's statement made in the bedroom doorway. Because there was no error, any failure to object by trial counsel did not prejudice defendant and, as a result, he was not denied effective assistance of counsel. *See State v. Brewton*, 173 N.C. App. 323, 333, 618 S.E.2d 850, 858 ("[B]ecause we find no error in the

instructions, defendant's claim for ineffective assistance of counsel [based on counsel's failure to object to the instructions] must also be rejected."), *disc. review denied*, 360 N.C. 177 (2005), *cert. denied,* —— N.C. ——, 636 S.E.2d 812 (2006).

## II

**[2]** Defendant next argues that the trial court erred in denying his motion to dismiss because the State presented insufficient evidence to support a finding that defendant had the specific intent to kill. In ruling on a defendant's motion to dismiss, the trial court must determine whether the State presented substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). When deciding a motion to dismiss, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

Our Supreme Court has observed that "[s]pecific intent to kill is an essential element of first degree murder, but it is also a necessary constituent of the elements of premeditation and deliberation." *State v. Jones*, 303 N.C. 500, 505, 279 S.E.2d 835, 838 (1981). As a result, proof of premeditation and deliberation is also proof of intent to kill. *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005). Premeditation and deliberation ordinarily must be proven by circumstantial evidence:

> Among other circumstances from which premeditation and deliberation may be inferred are (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Keel*, 337 N.C. 469, 489, 447 S.E.2d 748, 759 (1994) (internal quotation marks omitted), *cert. denied*, 513 U.S. 1198, 131 L. Ed. 2d 147, 115 S. Ct. 1270 (1995).

In this case, the State offered evidence relating to most of these circumstances. Wendy testified to a history of defendant's beating Buster. On the morning Buster was killed, defendant, without provocation, again began hitting Buster while they were driving in the van. When they returned home, defendant told his nephew to tell Buster good-bye because Buster would not be there when the nephew returned from school. Before the nephew left for school, he witnessed defendant again hitting and kicking Buster. Wendy then heard defendant tell Buster to "say [his] prayers," which was immediately followed by gasping noises. According to the medical examiner, Buster's cause of death was a combination of strangulation injuries to the neck, as well as blunt trauma to the head and abdomen. After the killing, defendant orchestrated a scheme to conceal Buster's body and evidence related to his killing.

When this evidence is viewed in the light most favorable to the State, it is sufficient to allow a jury to conclude that defendant had the specific intent to kill the victim. *See State v. Dawkins*, 162 N.C. App. 231, 240, 590 S.E.2d 324, 331 (sufficient evidence of premeditation and deliberation existed when State presented evidence of prior fighting and conflict between defendant and victim; prior to victim's death, defendant threatened to kill the victim; and following the killing, defendant engaged in an "elaborate process of concealing the body"), *disc. review denied*, 358 N.C. 237, 595 S.E.2d 439 (2004). The trial court, therefore, properly denied defendant's motion to dismiss.

III

**[3]** Finally, defendant argues that the prosecutor made two sets of improper statements in his closing argument. Because defendant did not object, the standard of review is whether the argument was "so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *State v. Barden*, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074, 123 S. Ct. 2087 (2003). The question this Court must answer is whether the State's argument "strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord . . . ." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002).

Defendant first challenges the following assertion by the prosecutor:

> Remember, Cecil is not on trial here. Cecil may have a trial. It's not today and it's not with you as the jury. His trial is down the road somewhere. So don't go back there and say we have to do this because of Cecil. No. Cecil's trial is for another day. Cecil needs to be held just as responsible as the defendant.

In contending that the prosecutor's argument was improper because he knew that Cecil would not be held just as accountable as defendant, defendant points to the indictment of Cecil Henson for accessory after the fact to murder.

Although the record on appeal contains a copy of Cecil Henson's indictment dated 28 March 2005, our review of the record does not indicate that the indictment was ever provided to the court. Inclusion of the indictment in the record on appeal, therefore, violated the Rules of Appellate Procedure. *See* N.C.R. App. P. 9(a)(3) and 11(c). "The role of an appellate court is to review the rulings of the lower court, not to consider new evidence or matters that were not before the trial court." *Citifinancial, Inc. v. Messer,* 167 N.C. App. 742, 748, 606 S.E.2d 453, 457 (Steelman, J., concurring), *appeal dismissed and disc. review denied,* 359 N.C. 410, 612 S.E.2d 317 (2005).

Nevertheless, immediately prior to Cecil Henson's being called by defendant as a witness, the trial court asked whether the charges against Henson were the same or different from those against defendant. The prosecutor responded: *"At this point* it's accessory after the fact of murder." (Emphasis added.) Based on that pending charge, the prosecutor's statements in the closing argument regarding Henson's going to trial were not inaccurate. With respect to the assertion that "Cecil needs to be held just as accountable as the defendant," the record contains no indication—and defendant does not argue on appeal—that the State was in any way precluded from seeking an indictment against Henson for additional charges. As the prosecutor's answer to the trial court indicated, the charge of accessory after the fact was simply the only charge pending *at that point.* We do not, therefore, believe that the prosecutor's statement was so grossly improper as to require the court to intervene *ex mero motu.*

[4] Defendant also asserts that the trial court should have intervened during the following portions of the State's closing argument:

**STATE v. KIRBY**

[187 N.C. App. 367 (2007)]

One thing to remember in all of this is that the Defense is trying to make Cecil stand out. And as I said Cecil's trial is another day. It's not today. But they are trying to make Cecil look like really the bad guy. Well, you saw Cecil when he walked up here. You saw Cecil when he was back at the back the first day when he was asleep in the back. And he is trying to say that Cecil is the ring leader of this and Cecil is the real problem.

Cecil doesn't have the personality to be the real problem in this. This defendant does, not Cecil. Cecil is an old man. You saw him walk up there. And he is the man that they are trying to say is responsible for this. No. The defendant is a young man. The defendant could have stopped it at any point.

According to defendant, these statements amounted to the prosecutor's personal opinion and were not based on evidence that was properly admitted at trial. We disagree.

A prosecutor's closing argument must "(1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial." *Jones*, 355 N.C. at 135, 558 S.E.2d at 108. Here, the prosecutor was not interjecting his personal opinion or relying upon matters outside the evidence.

The jurors had an opportunity to observe both Cecil Henson and defendant. In the closing argument, the prosecutor simply asked the jurors to take into account those observations regarding physical characteristics and courtroom behavior in determining the credibility of defendant's contention that Cecil Henson was the ring leader. Observing the parties and the witnesses in order to assess credibility and determine the weight to give to the evidence is part of the jury's responsibility. *See State v. Allen*, 360 N.C. 297, 307-08, 626 S.E.2d 271, 281 (holding that prosecutor could properly argue that it "would be hard to imagine" third person shooting the victim because of her size), *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 116, 127 S. Ct. 164 (2006); *State v. Brown*, 320 N.C. 179, 199, 358 S.E.2d 1, 15 ("Urging the jurors to observe defendant's demeanor for themselves does not inject the prosecutor's own opinions into his argument, but calls to the jurors' attention the fact that evidence is not only what they hear on the stand but what they witness in the courtroom."), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406, 108 S. Ct. 467 (1987). We, therefore,

hold that the trial court did not err in failing to intervene as to this portion of the State's closing argument.

No error.

Judges CALABRIA and JACKSON concur.