ELIZABETH C. HARRINGTON PLAINTIFF-APPELLEE v. ADRIAN SHELTON WALL,
A.K.A. DARIUS MASON, DEFENDANT-APPELLANT

No. COA10-696

(Filed 17 May 2011)

**Judges— motion to recuse—denied**

The trial court did not err by denying defendant's motion to recuse in a domestic action in which defendant alleged bias from a prior judicial campaign. Defendant did not show substantial evidence of such a personal bias, prejudice, or interest that the trial judge would not be able to rule impartially or circumstances that would cause a reasonable person to question whether the judge could rule impartially.

Judge BEASLEY concurring in part and dissenting in part.

Appeal by Defendant from order entered 30 September 2009 by Judge Charles T. Anderson; and orders entered 13 October 2009, 15 December 2009, and 12 January 2010 by Judge Beverly A. Scarlett, in District Court, Orange County. Appeal by Defendant's attorney, Betsy J. Wolfenden, from order entered 12 January 2010 by Judge Beverly A. Scarlett in District Court, Orange County. Heard in the Court of Appeals 11 January 2011.

*No brief for Plaintiff-Appellee.*

*Betsy J. Wolfenden for Defendant-Appellant; and Betsy J. Wolfenden, pro se.*

McGEE, Judge.

Elizabeth Harrington (Plaintiff) commenced this action by filing a complaint on 6 January 2009, seeking child support and custody of a child born to Plaintiff and Adrian Wall (Defendant). Defendant was served on 7 January 2009, but he failed to timely file any responsive pleadings. Plaintiff moved for entry of default on 24 February 2009, and the Clerk of Superior Court entered default the same day. Defendant retained an attorney, Betsy Wolfenden (Attorney Wolfenden), who filed a notice of appearance on 13 April 2009.

Defendant filed a motion to set aside the entry of default and a motion to continue on 13 April 2009. The trial court entered an order on 4 May 2009 *nunc pro tunc* 24 April 2009, granting, *inter alia,* a

continuance "on the [c]ourt's own motion[.]" The trial court continued the matter to 17 and 18 June 2009. The trial court entered an order dated 22 June 2009 denying Defendant's motion to set aside the entry of default. The trial court also entered an order dated 22 June 2009 *nunc pro tunc* 17 June 2009, granting Plaintiff custody of the child and child support.

Defendant filed a motion to recuse dated 24 June 2009, requesting that Judge Beverly Scarlett recuse herself from hearing further matters in this case. Defendant also filed a document titled "Verified Rule 59 and 60 Motions" that was dated 6 July 2009. In that document, Defendant argued that Judge Scarlett "conducted her own investigation outside the courtroom[,]" and displayed "partiality and bias[.]" Defendant also filed a motion dated 24 August 2009 to compel Judge Scarlett to make oral deposition regarding Judge Scarlett's alleged bias. Judge Charles T. Anderson entered an order on 30 September 2009 denying Defendant's motion to compel deposition. Defendant appeals from that order.

The trial court entered an order titled "Response to Defendant's Request for Relief" on 13 October 2009. In that order, the trial court determined that "Defendant's request to set aside the order entered on June 17, 2009 and executed on June 22, 2009 is denied." Defendant also appeals from that order.

The trial court entered an order on Defendant's "Verified Rule 59 and 60 Motions" on 15 December 2009. The trial court denied Defendant's Rule 59 and Rule 60 motions as being "without legal justification" because Defendant "was not able to provide to the court any law requiring the [c]ourt to find an attorney at the call of the case when the case was properly noticed and set for hearing." Defendant also appeals from that order.

Plaintiff filed a motion for Rule 11 sanctions, arguing that there was no basis in fact or law for Defendant's Rule 59 and Rule 60 motions and requested that Defendant be ordered to pay Plaintiff's attorney's fees incurred in defending against the motions. The trial court granted Plaintiff's motion for sanctions in an order entered 12 January 2010. The trial court made the following finding:

> On their face, Defendant's verified Rule 59 and 60 Motions, appear to the [c]ourt to be without legal justification. The Defendant's counsel was unable to provide any legal justification for the same at this hearing. The Defendant failed to exercise his right to appear and be heard at the June 17, 2009 custody and

child support hearing, following the advice of his counsel. The Defendant's counsel chose not to obtain leave of court to continue the hearing or hold it open while she filed papers with the Court of Appeals. The Defendant's counsel also chose not to remain in the Courtroom for this case to begin on June 17, 2009, even though she had ample notice to appear on June 17, 2009 and even though she had already completed her filings and returned from the Court of Appeals before the hearing in this case began on June 17, 2009.

The trial court concluded that Defendant's Rule 59 and 60 motions were "not well grounded in fact or law, and were filed for an improper purpose." The trial court ordered that Defendant and Attorney Wolfenden "pay Plaintiff's counsel fees and expenses incurred in having to defend against . . . Defendant's . . . Rule 59 and Rule 60 Motions in the amount of $8,175.33." Defendant and Attorney Wolfenden both appeal from that order.

## The Issues Before Us

We first note that Defendant filed notice of appeal from Judge Anderson's 30 September 2009 order. However, Defendant's arguments are focused on Judge Scarlett's conduct and Defendant's "right to a fair trial in a fair tribunal." Therefore, Defendant has abandoned his appeal of Judge Anderson's order. N.C.R. App. P. 28(b)(6).

We also note that, in Defendant's notice of appeal from the 15 December 2009 order denying his motion to recuse and his Rule 59 and Rule 60 motions, he does not appeal the underlying child custody and support order, nor the order denying his motion to set aside entry of default. Because Defendant has not appealed from the order denying his motion to set aside entry of default nor from the order for child custody and support, we do not address the propriety of those orders. Rather, we have jurisdiction only to consider the orders from which Defendant has provided proper notice of appeal. *See Von Ramm v. Von Ramm*, 99 N.C. App. 153, 157, 392 S.E.2d 422, 425 (1990) ("We determine that this court has jurisdiction to review only appellant's appeal of the trial court's January 1989 order, which denies defendant's Rule 59 motion. On its face, defendant's notice of appeal fails to specify any other judgment or order. Furthermore, a reader cannot 'fairly infer' from the language of the notice of appeal that appellant intended also to appeal the June 1988 order which underlies defendant's Rule 59 motion."). Thus, the orders remaining for our review are: (1) the trial court's order entered 15 December

2009 "denying Defendant's motion to stay proceeding, motion to recuse and verified rule 59 and 60 motions asking that he be relieved from orders entered . . . 17 and 22 June 2009[;]" and (2) the trial court's order regarding sanctions entered 12 January 2010.

## Standards of Review

Defendant argues that the trial court violated his constitutional due process rights in that Judge Scarlett's alleged personal bias against Attorney Wolfenden and Judge Scarlett's failure to reveal this bias to Defendant prevented Defendant from receiving a fair trial. Defendant contends *de novo* review is ordinarily appropriate in cases where constitutional rights are implicated. However, Defendant raised his arguments before the trial court in the form of a Rule 59 motion for a new trial, a Rule 60 motion to set aside judgment, and a motion to recuse.

"The burden is on the party moving for recusal to ' "demonstrate objectively that grounds for disqualification actually exist." ' " *State v. Kennedy*, 110 N.C. App. 302, 305, 429 S.E.2d 449, 451 (1993) (citation omitted).

> The moving party may carry this burden with a showing " 'of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially,' " or a showing that the circumstances are such that a reasonable person would question whether the judge could rule impartially.

*Id.* (internal citation omitted). We thus review the trial court's order to determine whether Defendant presented substantial evidence of such personal bias on the part of Judge Scarlett that Judge Scarlett would have been unable to rule impartially, or that circumstances were such that a reasonable person would question whether Judge Scarlett could rule impartially.

N.C. Gen. Stat. § 1A-1, Rule 59(a)(1) (2009) provides: "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds: . . . [a]ny irregularity by which any party was prevented from having a fair trial[.]" N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2009) provides that: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . [a]ny . . . reason justifying relief from the operation of the judgment." In general, a trial court's ruling on a Rule 59 motion for a new trial is

reviewed for an abuse of discretion. *Batlle v. Sabates*, 198 N.C. App. 407, 423, 681 S.E.2d 788, 799 (2009). " 'However, where the [Rule 59] motion involves a question of law or legal inference, our standard of review is *de novo*.' " *Id.* (citation omitted). " 'As with Rule 59 motions, the standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion.' " *Id.* (citation omitted). " 'A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (citation omitted). Because Defendant's Rule 59 and Rule 60 motions were not based upon an alleged error of law, we review the trial court's rulings on these motions for an abuse of discretion.

N.C. Gen. Stat. § 1A-1, Rule 11(a) (2009) provides:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. . . . The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose[.]

Our Supreme Court has held that appellate review of a trial court's decision on mandatory sanctions pursuant to Rule 11 is *de novo* and consists of the following determinations:

> [T]he appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A 1, Rule 11(a).

*Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). "In reviewing the appropriateness of a particular sanction under either Rule 11 or the inherent powers of the court, we exercise

an abuse of discretion standard." *Dunn v. Canoy*, 180 N.C. App. 30, 48, 636 S.E.2d 243, 255 (2006).

However, Defendant makes no argument concerning the trial court's orders on his Rule 59 and Rule 60 motions, nor on Plaintiff's motion for Rule 11 sanctions, other than Defendant's attack on the orders' validity due to Judge Scarlett's alleged bias. Defendant does not argue that the trial court abused its discretion in entering either order. Nor does Defendant challenge any of the findings of fact or conclusions of law in the trial court's order concerning Rule 11 sanctions. Because Defendant's sole argument concerns Judge Scarlett's alleged bias, the only issue for our review is whether Judge Scarlett should have recused herself from this case and whether, after her failure to recuse herself, the orders entered by Judge Scarlett must be vacated.

### The 15 December 2009 Order

Defendant's argument regarding the orders appealed is that Judge Scarlett "violated [Defendant's] constitutional right to a fair trial in a fair tribunal by not recusing herself at the outset of this case when she failed to reveal her personal bias against [Defendant's] attorney . . . and when Judge Scarlett violated the North Carolina Code of Judicial Conduct." We note at the outset that a significant portion of Defendant's appellate brief is directed towards a complaint submitted by Judge Scarlett anonymously to the North Carolina State Bar regarding Attorney Wolfenden's conduct during Attorney Wolfenden's judicial campaign. However, we note that the last of Attorney Wolfenden's notices of appeal was filed 20 January 2010 and, in her brief, Attorney Wolfenden states that she learned of Judge Scarlett's authorship of the complaint upon "receiv[ing] discovery from the [North Carolina] State Bar" on 22 January 2010. Thus, Attorney Wolfenden did not know of this fact until after this appeal was filed and, therefore, this particular information of alleged bias was not brought to the attention of the trial court in Defendant's motion to recuse or his Rule 59 and Rule 60 motions. " 'The role of an appellate court is to review the rulings of the lower court, not to consider new evidence or matters that were not before the trial court.' " *State v. Kirby*, 187 N.C. App. 367, 376, 653 S.E.2d 174, 180 (2007) (citation omitted).

In Defendant's Rule 59 and Rule 60 motions, Defendant alleged that:

> 1. This case was originally set to be heard on 24 April 2009 before the Honorable Alonzo B. Coleman, Jr., on the issues of child custody and child support.

2. On the morning of 24 April 2009, the Honorable Beverly Scarlett was brought in to hear this case though Judge Coleman was in the courthouse at the time.

3. In this case, and in at least one other Orange County civil case involving child custody . . . Judge Scarlett did not remain independent, impartial and faithful to the law as required by the North Carolina Code of Judicial Conduct.

4. Upon information and belief . . . Judge Scarlett conducted her own investigation outside the courtroom.

5. . . . Judge Scarlett failed to remain neutral and unbiased. Examples of Judge Scarlett's partiality and bias in the instant case are as follows[.]

Defendant then recited the following sequence of events which occurred on the day of the hearing:

a. Judge Scarlett refused to enter a court order denying Defendant's Motion to Set Aside Entry of Default from which he could appeal prior to the hearing on permanent child custody and child support, leaving . . . Defendant with no other remedy than to petition the North Carolina Court of Appeals ("Court of Appeals") for relief the day the hearing on permanent child custody was set to commence.

. . . .

d. Undersigned counsel did not instruct her client to be present in court [at the hearing]. . . .

e. After filing Defendant's petitions and motion for a temporary stay with the Court of Appeals, undersigned counsel arrived at the Orange County Courthouse . . . at approximately 10:30 a.m. to serve the petitions and motion for temporary stay on Judge Scarlett.

f. When undersigned counsel entered the courtroom, Judge Scarlett was on the bench presiding over another case.

. . . .

h. When undersigned counsel began leaving the courtroom, the bailiff told her that Judge Scarlett said she could not leave the courtroom and that the hearing on permanent child custody and support in the instant case was going to begin next.

i. Undersigned counsel sat down in the courtroom and waited for Judge Scarlett to commence the permanent child custody and child support hearing in the instan[t] action.

j. Judge Scarlett recessed court and left the courtroom. Upon information and belief, Judge Scarlett took Defendant's petitions with her when she left the courtroom.

k. After undersigned counsel waited for Judge Scarlett approximately 40 minutes, she gave her cellular telephone number to the bailiff and asked to be called when Judge Scarlett returned to the courtroom as she wanted to get something to eat prior to the hearing.

l. Undersigned counsel got something to eat and then drove back to her office in Chapel Hill to retrieve Defendant's file and to see if the Court of Appeals had issued a ruling on Defendant's motion for temporary stay.

Defendant contended that the trial court did not call Defendant's attorney on her cell phone before starting the hearing and thus conducted the hearing without the presence of Defendant or his attorney. Defendant argued in his motion that the trial court violated his due process rights: "(1) [by] not remaining impartial in this matter; (2) by entering court orders after denying the Defendant notice, a right to be heard and a method of appeal; and (3) by entering court orders based solely upon Plaintiff's perjured testimony." Defendant then requested that the orders be set aside and that Defendant be granted a new trial.

In Defendant's motion to recuse, Defendant asserted the same essential facts and also included the following allegations:

2. In 2008 [Attorney Wolfenden] ran for district court judge in Judicial District 15B against the Honorable Alonzo B. Coleman, Jr.

3. During [her] campaign [she] spoke at various public events.

. . . .

6. Since the campaign, Judge Scarlett appears to have developed a strong personal animosity towards [Attorney Wolfenden].

Defendant contended that the personal animosity that Judge Scarlett harbored against Attorney Wolfenden was indicative of bias which could be cured only by Judge Scarlett's recusal from Defendant's case.

**HARRINGTON v. WALL**

[212 N.C. App. 25 (2011)]

The trial court's order denying Defendant's motion to recuse and Rule 59 and Rule 60 motions contained the following findings:

10. There was opportunity for both counsel for the Defendant and the Defendant to be present on June 17, 2009 at the child support and custody hearing prior to the close of the case.

11. Neither counsel for the Defendant nor the Defendant himself appeared on June 17, 2009 or provided either before or during this hearing legal justification for their failure to appear at the child support and custody hearing on June 17, 2009 before the close of the case. On June 17, 2009, a full hearing was had on the merits, without any allegations alleged in the Complaint or by the Plaintiff as being accepted as being true because of Defendant's failure to deny the same.

12. At this hearing, the Defendant presented no evidence of grounds for a new trial or to alter or amend the Order of this [c]ourt entered as a result of the June 17, 2009 child support and custody hearing.

13. At this hearing, the Defendant presented no evidence warranting relief from the Order of this [c]ourt entered as a result of the June 17, 2009 child support and custody hearing.

14. At this hearing, the Defendant presented no evidence of a meritorious defense warranting relief from the Order of this [c]ourt entered as a result of the June 17, 2009 child support and custody hearing.

15. It appears to this [c]ourt that the Defendant's Verified Rule 59 and Rule 60 Motions are without legal justification.

The trial court then concluded as follows:

2. The Defendant presented no legal or factual basis for his Motion to Recuse and the same should be denied.

. . . .

5. The Defendant's Verified Rule 59 and Rule 60 Motions are without legal justification and should be denied.

As stated above, "[t]he burden is on the party moving for recusal to ' "demonstrate objectively that grounds for disqualification actually exist." ' " *Kennedy*, 110 N.C. App. at 305, 429 S.E.2d at 451 (citation omitted).

The moving party may carry this burden with a showing ' "of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially," ' or a showing that the circumstances are such that a reasonable person would question whether the judge could rule impartially.

*Id.* (citation omitted).

Reviewing the allegations in Defendant's motion to recuse, we note that Defendant argued that Judge Scarlett "appear[ed] to have developed a strong personal animosity towards" Attorney Wolfenden because of Attorney Wolfenden's conduct during her campaign against Judge Coleman for District Court Judge. Defendant also alleged that Judge Scarlett entered "numerous tendentious and contradictory court orders, knowing that some of the orders have included false findings of fact and erroneous conclusions of law." Defendant also contended that Judge Scarlett allowed opposing attorneys courtesies that she did not extend to Attorney Wolfenden.

Defendant has not filed a transcript of the 17 June 2009 hearing, but reviewing the trial court's orders, Defendant's motions, and Defendant's characterization of the hearing in his brief, we are not persuaded that the trial court demonstrated any personal bias in conducting the hearing. Other than the allegations set forth in Defendant's verified motion to recuse, Defendant presented no actual evidence supporting his contention that Judge Scarlett harbored a personal animosity towards Attorney Wolfenden. At worst, the evidence before Judge Scarlett suggested that Judge Scarlett had disapproved of Attorney Wolfenden's conduct in campaigning against Judge Coleman, and that Judge Scarlett failed to call Attorney Wolfenden to a hearing that was properly scheduled and noticed for 17 June 2009. We also note that Judge Coleman, Attorney Wolfenden's former opponent, had originally been scheduled to hear Defendant's case, but on the day of the hearing was replaced by Judge Scarlett.

On these facts, we find that Defendant did not show " ' "substantial evidence that there exists such a personal bias, prejudice or interest on the part of [Judge Scarlett] that [s]he would be unable to rule impartially[.]" ' " *Kennedy*, 110 N.C. App. at 305, 429 S.E.2d at 451 (citation omitted). We also find that Defendant did not show "that the circumstances [were] such that a reasonable person would question whether [Judge Scarlett] could rule impartially." *Id.* Rather, Defendant has shown that Attorney Wolfenden and Judge Scarlett

HARRINGTON v. WALL

[212 N.C. App. 25 (2011)]

had a professional relationship which was, at worst, strained by the actions and demands Attorney Wolfenden made during her previous campaign, as well as during the proceedings, and which did not warrant recusal. We hold that the trial court did not err in denying Defendant's motion to recuse. *Compare In re Murchison*, 349 U.S. 133, 137, 99 L. Ed. 942, 946 (1955) (holding that it was a violation of a defendant's due process rights under the constitution for a judge to "act as a grand jury and then try the very persons accused as a result of his investigations."); *Dunn v. Canoy*, 180 N.C. App. 30, 38 39, 636 S.E.2d 243, 249 (2006) (holding that a judge was not required to recuse himself from a case despite having become frustrated by the parties' failure to reach a settlement, noting that, "[b]eyond [the judge's] reaction regarding [the attorney's] actions in connection with the settlement agreement, the record reveals nothing that could be construed as demonstrating any personal bias, prejudice, or interest by [the judge]."). We affirm the remaining order entered by the trial court.

Affirmed.

Judge BRYANT concurs.

Judge BEASLEY concurs in part and dissents in part by separate opinion.

BEASLEY, Judge, concurring in part and dissenting in part.

While I agree with the majority's conclusion that the trial court did not err in denying the motion to recuse based on alleged personal bias against Defendant's attorney Betsy Wolfenden (Wolfenden), because Wolfenden's conduct alone—and not Defendant's—created the bases for which the trial court denied Defendant's Rule 59 and 60 motions and granted Plaintiff's Rule 11 motion, I would reverse the trial court's rulings as to Defendant's Rule 59 and 60 motions and that portion of the Rule 11 sanction which orders Plaintiff's counsel to be compensated by Defendant and Wolfenden and order that the Rule 11 sanction apply only to Wolfenden.

I believe that this case presents exceptional circumstances warranting our invocation of Rule 2 of the North Carolina Rules of Appellate Procedure to address Defendant's appeals from the trial court's rulings on his Rule 59 and 60 motions and on Plaintiff's motion for Rule 11 sanctions. Where the adverse rulings against Defendant were due primarily to directives his own attorney gave him and con-

duct in which she alone engaged, and where the preservation of his appeal was lost at the hands of Wolfenden's own self-serving brief that fails to develop several obvious arguments that would have inured to the benefit of her client, I would choose to exercise our Rule 2 authority to prevent a manifest injustice to Defendant.

Mindful that our suspension of the appellate rules must be done "cautiously" and only in "exceptional circumstances," *State v. Hart*, 361 N.C. 309, 315-16, 644 S.E.2d 201, 205 (2007), Rule 2 enables this Court to vary the non-jurisdictional requirements of our rules, *see Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008) ("A jurisdictional default . . . precludes the appellate court from acting in any manner other than to dismiss the appeal."), to consider significant issues of important "public interest" or "prevent manifest injustice to a party," N.C.R. App. P. 2. Here, the various notices of appeal filed on Defendant's behalf reference, *inter alia*, the 15 December 2009 order denying Defendant's "Verified Rule 59 and 60 Motions"—which requested relief from the trial court's orders denying his motion to set aside entry of default and awarding Plaintiff child custody and support— and the order granting Plaintiff's motion for Rule 11 sanctions dated 29 December 2009, *nunc pro tunc* 15 December 2009. Accordingly, the specific orders are properly before this Court, and where there is no jurisdictional default related thereto, we have the "authority to consider whether the circumstances of [the] purported appeal[s] justify application of Rule 2." *Dogwood*, 362 N.C. at 198, 657 S.E.2d at 365. The circumstances which justify the application of Rule 2 to address the merits of issues otherwise deemed abandoned relate to Wolfenden's actions throughout the course of her representation in this matter and her disbarment,[1] which was ordered before she submitted a "joint brief" on behalf of herself and Defendant in this appeal.

Wolfenden was disbarred by order of the DHC dated 29 July 2010. However, having filed several notices of appeal on Defendant's behalf and identifying herself as counsel of record, there is no indication in the record or the joint brief that Wolfenden ever informed her client of her disbarment so as to give him the choice to retain substitute counsel for purposes of this appeal. *See* 27 NCAC 01B .0124 ("A disbarred or suspended member of the North Carolina State Bar will promptly notify by certified mail, return receipt requested, all clients

---

1. I would take judicial notice of the 29 July 2010 order entered by the Disciplinary Hearing Commission (DHC) of the North Carolina State Bar (Bar) disbarring Wolfenden from the practice of law.

being represented in pending matters of the disbarment or suspension, the reasons for the disbarment or suspension, and consequent inability of the member to act as an attorney after the effective date of disbarment or suspension and will advise such clients to seek legal advice elsewhere."). While Wolfenden had thirty days from the date she was served with the disbarment order to complete pending matters, and the joint brief was filed within such time frame, it appears that her decision not to withdraw from representation in this appeal was made at Defendant's expense.

First, Wolfenden alleged in a joint motion to this Court that "she [was] unable to complete her and Defendant-Appellant's brief by [the original due date]" because she had "been occupied with preparing and filing her [100-page] motion for stay and petition for writ of supersedeas [regarding her disbarment] and handling her trial practice." Despite this Court extending the filing date to ·20 August 2010, Wolfenden focused on her own disciplinary case and again failed to meet the deadline. Specifically, Wolfenden indicated in a motion to deem the joint brief timely filed that "[b]ecause of the time required to complete her petition"—where Wolfenden had "filed a 171-page (including exhibits) Petition for Writ of Supersedeas in her State Bar Disciplinary proceeding, NC Supreme Court Docket No. 352P10"— she "was unable to complete the joint brief in the instant case prior to . . . 26 August 2010."

Compounding Wolfenden's prioritization of her own appeal in the DHC action over Defendant's appeal here, the "joint" brief filed in this action does not appear to be joint at all. Rather, the entire argument is dedicated to the recusal issue and what appears to be Wolfenden's own agenda of attempting to reveal some sort of personal bias harbored against her by members of the judiciary in District 15-B. The perception that Wolfenden did not undertake the drafting of their joint brief primarily to safeguard Defendant's interests, if at all, is consistent with several "Findings of Fact Regarding Discipline" made by DHC in the disciplinary action connoting a pattern of similar self-serving behavior:

3. Wolfenden's trial practice has primarily involved domestic cases and juvenile abuse, neglect, and dependency cases.

4. Litigants in domestic cases are experiencing significant family turmoil. They often have concerns about their financial futures, living arrangements, and childcare. As a result, they are distressed, anxious, and not necessarily capable of making dispas-

sionate and well-informed decisions. This makes litigants in domestic cases a particularly vulnerable segment of the population.

5. Juvenile abuse, neglect, and dependency cases by definition involve families in crisis, and parents in these cases are vulnerable for the same reasons domestic litigants are vulnerable.

6. Wolfenden engaged in a pattern of manipulating her vulnerable clients by using their cases as a platform for her groundless personal attacks on the professional integrity of opposing counsel, the judiciary, and the court system as a whole. In so doing, she elevated her own interests above her clients' interests.

It is apparent that she engaged in the same conduct, elevating her own interests above Defendant's, in drafting the instant brief. Moreover, it cannot be gleamed from the record whether she afforded Defendant any opportunity to retain another attorney who was not consumed with representing his own professional interests (or if Defendant even knew that Wolfenden had been disbarred). What is clear, however, is that in drafting the instant brief purportedly on her client's behalf, Wolfenden preserved issues important to her and not Defendant. The understanding that Defendant did not know his attorney was not acting in good faith in taking up his appeal at a time when she was disbarred but allowed to wrap up pending matters is an exceptional circumstance meriting suspension of the non-jurisdictional appellate rules. Invocation of Rule 2 would save Defendant from being prejudiced by the same sort of selfish behavior that led, in part, to his attorney's disbarment, of which Defendant may not have been aware, and thereby prevent manifest injustice. Preserving Defendant's appeals from these orders would also further a significant public interest in a case involving child custody issues among litigants who are notably vulnerable. This is especially so where the permanent custody order entered in this case, which grants Plaintiff sole legal and physical custody of the parties' minor child and prevents Defendant from having any contact with his son, arose from a hearing that Wolfenden admittedly advised Defendant **not** to attend and then failed to appear herself, leaving Defendant's interests unrepresented and Plaintiff's evidence uncontested. Thus, I would reverse the trial court's rulings on Defendant's Rule 59 and 60 motions and on Plaintiff's motion for Rule 11 sanctions as applied to Defendant due to Wolfenden's woefully deficient advocacy.

Specifically, our Court should consider whether the trial court abused its discretion in denying Defendant's request for relief from

the trial court's denial of his motion to set aside the entry of default and the order for child support and custody pursuant to Rules 59 and 60 of the North Carolina Rules of Civil Procedure. Rule 60 authorized the trial court to relieve Defendant from its order denying his motion to set aside entry of default and its order granting Plaintiff permanent sole physical and legal custody for, *inter alia*, "[m]istake, inadvertence, surprise, or excusable neglect" and "[a]ny other reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(1), (6) (2009). A new hearing on Plaintiff's claims for child custody and support may have also been granted pursuant to Rule 59 for, in pertinent part, "[a]ny irregularity by which any party was prevented from having a fair trial[.]" N.C. Gen. Stat. § 1A-1, Rule 59(a)(1) (2009).

Here, the custody action initiated by Plaintiff was set for mediation. As alleged, Defendant, who was not represented by counsel at the time, attended the mandatory mediation on 26 January 2009 but was later informed that Plaintiff would not sign the parenting agreement reached by the parties and prepared by the custody mediator. Plaintiff moved for entry of default based on Defendant's failure to thereafter file any responsive pleadings. After default was entered against Defendant on 24 February 2009, Wolfenden appeared on his behalf and moved to set aside the entry of default. Following a hearing, the trial court entered an order requiring counsel for both parties to submit a memorandum of law addressing whether the entry of default should be set aside. Wolfenden prepared a memorandum, citing relevant law in support of the argument that the entry of default should be set aside because Defendant "made an appearance in this case by mediating child custody in good faith" and "entries of default are disfavored in child custody cases," as hearings on the merits are far favored to treating the complaint's allegations as admitted. Plaintiff declined to file a memorandum, and, where Wolfenden emailed Judge Scarlett to request a ruling prior to the custody hearing set for 17 June 2009, Judge Scarlett responded by email on 15 June 2009 that the "[m]otion to set aside the entry of default is denied." Due to the lack of a formal written order by which she could appeal the denial, Wolfenden elected to travel to Raleigh on the morning of the custody and support hearing to file a motion for temporary stay, along with various petitions, with this Court. Wolfenden, however, admittedly instructed her client not to be present in court on 17 June 2009 out of fear that "Judge Scarlett [would] force[] [him] to proceed without counsel at a child custody hearing." In any event, Wolfenden arrived at the Orange County courthouse before Defendant's case was called,

but she left the courtroom thereafter and she and Defendant missed the custody hearing. Again, Wolfenden ignored the trial court's directive to appear and failed to inform her client that he too must appear in that his appearance in court had greater priority over Defendant's conference with Wolfenden.

On 22 June 2009, the trial court entered a written order denying Defendant's motion to set aside the entry of default, based on findings that Plaintiff had given Defendant sufficient opportunity to file responsive pleadings after informing him they did not have an agreement as to custody; the Defendant had not shown good cause for setting aside the entry of the default; and, notwithstanding the fact that the custody hearing had already been conducted without Defendant's interests being represented, "that even with the entry of default, appropriate evidence can be heard to ensure the best interests of the child are protected." However, the trial court also found and concluded that "[a]s a result of the default entered against the Defendant, the substantive allegations raised by the Plaintiff's Complaint are no longer in issue and are deemed admitted." The trial court entered an order for child custody and child support that same day, *nunc pro tunc* 17 June 2009, specifically finding, *inter alia* that Defendant and Wolfenden had "failed to appear at the hearing" without seeking leave of court; that Plaintiff was prepared to proceed with "a full hearing on the merits, as if an Entry of Default had never been granted" and "was not relying on the Entry of Default or any deemed admissions by the Defendant in the presentation of her case"; that "Defendant, if he had appeared would have had ample opportunity at the hearing to present all witnesses and evidence on the merits of all his claims and defenses regarding the issues of permanent custody and child support"; and that "Defendant's attorney was observed sitting outside of the courtroom at the time the hearing in this case began." The trial court concluded that Defendant was "not a fit and proper person to have any form of custody of the minor child or to have any visitation with the minor child," awarded "the sole physical and legal custody, care and control of the minor child born to the parties"; and precluded Defendant from having any "contact with the minor child at any place or in any form" until further court order.

On or about 6 July 2009, Defendant filed "Verified Rule 59 and 60 Motions," requesting relief from the 22 June 2009 orders denying his motion to set aside the entry of default and awarding Plaintiff child custody and support. Following a hearing on 4 September 2009, the trial court denied Defendant's Rule 59 and 60 motions. However, it is

clear from the face of Defendant's motion that he did not appear at the custody hearing based on his attorney's directives, and Wolfenden's imprudent behavior that caused her to miss the same hearing should not be imputed to Defendant in determining the fairness of leaving his parental interests unrepresented in providing the impetus for the trial court's conclusion that Defendant was "not a fit and proper person to have any form of custody of the minor child. . . ." (emphasis added). A concurring opinion stresses the important public policy principles involved where

> [t]he trial court's initial custody order, awarding custody to the father, was the result of a hearing at which neither the mother nor the child were present. The court did not appoint a guardian ad litem to represent the interests of the child. The only evidence received by the court was presented by the father. Although the custody order was not technically denominated a default judgment, it was, in effect, a result reached by default, since the court heard only one side of the dispute.

> Even in suits involving competent adults, our jurisprudence disfavors default judgments, believing that justice is more likely to result from a full, fair adversarial proceeding. *See, e.g., Estate of Teel v. Darby*, 129 N.C. App. 604, 607, 500 S.E.2d 759, 762 (1998) ("[P]rovisions relating to the setting aside of default judgments should be liberally construed so as to give litigants an opportunity to have a case disposed of on the merits."). In some instances, where parties sit on their rights, we allow dollars or widgets to go by default. However, our courts should go the extra mile to insure that custody of our children does not go by default. *See Qurneh v. Colie*, 122 N.C. App. 553, 559, 471 S.E.2d 433, 436 (1996) ("As a policy matter, issues such as custody should only be decided after careful consideration of all pertinent evidence in order to ensure the best interests of the child are protected.")

*West v. Marko*, 141 N.C. App. 688, 695, 541 S.E.2d 226, 231 (2001) (Fuller, J., concurring). The concurring opinion emphasized that "to the extent possible, child custody determinations should be based upon consideration of the best available evidence, and should not be based merely upon deemed admissions or one parent's perspective." *Id.* at 695-96, 541 S.E.2d at 231.[2]

---

2. There are certainly instances where it is appropriate for the court to award custody where a noncomplying or absent party fails to file an answer or otherwise comply with court orders and the court is aware that the noncomplying or absent party has received proper notice of the custody action.

While, in awarding custody to Plaintiff, the trial court found that Plaintiff was not relying on any allegations of the complaint having been deemed admitted via the entry of default, the trial court's order denying Defendant's motion to set aside the entry of default specifically finds and concludes that "[a]s a result of the default entered against the Defendant, the substantive allegations raised by the Plaintiff's Complaint are no longer in issue and are deemed admitted." Thus, it is not clear whether the trial court relied on any allegations of the complaint as having been deemed admitted by Defendant. Moreover, although Plaintiff's complaint requests that "Defendant be granted reasonable and consistent visitation with the minor child," the trial court denied Defendant any visitation rights after hearing only one side of the dispute. Finally, even if the trial court's denial of Defendant's motion to set aside the entry of default did not prejudice Defendant, I believe this Court should consider whether Defendant's failure to appear at the 17 June 2009 custody hearing and thereby protect his own interests was the result of his justified reliance on his attorney's instructions. The record suggests that Defendant was paying proper attention to his case, and there is nothing to indicate that Defendant's failure to appear at the custody hearing was anything more than a client heeding what he believed to be his attorney's good-faith strategic advice. Thus, I believe that this Court should consider whether Wolfenden's recklessness should have been imputed to Defendant or whether Defendant's reliance on his counsel and his subsequent failure to appear at a hearing of such importance was the result of excusable neglect, such that the custody and support order should have been set aside.

It is also important to address whether the trial court abused its discretion in awarding Rule 11 sanctions against Wolfenden and Defendant, jointly and severally, where the order and record evidence suggests that it was Defendant's attorney's conduct over which Defendant had no control that prompted the court to grant Plaintiff's motion. I acknowledge that

> a trial court may enter sanctions when the plaintiff or his attorney violates a rule of civil procedure or a court order, *Harris v. Maready*, 311 N.C. 536, 551, 319 S.E.2d 912, 922 (1984) (Rule 8(a)(2)); *Rivenbark v. Southmark Corp.*, 93 N.C. App. 414, 420, 378 S.E.2d 196, 200 (1989) (court order)[,] [and that] [t]he sanctions may be entered against either the represented party or the attorney, even when the attorney is solely responsible for the delay or violation. *See Smith [v. Quinn]*, 324 N.C. [316,] 318-19,

378 S.E.2d [28,] 30-31 [(1989)]; *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674 75, 360 S.E.2d 772, 776 (1987) (trial court properly sanctioned plaintiff for plaintiff's attorney's violation of court order); *cf. Turner v. Duke Univ.*, 101 N.C. App. 276, 280-81, 399 S.E.2d 402, 405, *disc. rev. denied*, 329 N.C. 505, 407 S.E.2d 552 (1991) (attorney committed acts giving rise to sanction).

*Foy v. Hunter*, 106 N.C. App. 614, 618, 418 S.E.2d 299, 302 (1992). "The lack of misconduct by a represented party, however, can mitigate against the use of severe sanctions against that party." *Id.* In fact, in *Simmons v. Tuttle*, 70 N.C. App. 101, 318 S.E.2d 847 (1984), this Court held that dismissal was improper where the plaintiff's counsel was negligent in failing to stay abreast of the trial calendar:

> It is quite plain that the plaintiff, as distinguished from his new counsel, was without fault in not reporting to the court or attending the call of the clean-up calendar, and his case should not have been dismissed because of it. Though the court could have properly found that plaintiff's new counsel was negligent for failing to ascertain that the case was on the clean-up calendar and acted accordingly, this neglect was not imputable to plaintiff; because an attorney's neglect will not be imputed to a litigant that is himself free of fault. According to the record, the dismissal was entered because plaintiff's attorney failed to discharge an administrative duty; a duty, as is generally known to the profession, that is rarely, if ever, discharged by litigants whose cases are being handled by lawyers, and that, for aught that the record shows, plaintiff knew nothing about. Thus, though the court certainly had grounds for sanctioning plaintiff's new counsel, had it chosen to do so, it had no grounds for sanctioning plaintiff at all . . . .

*Id.* at 105-06, 318 S.E.2d at 849.

Specifically in the Rule 11 context, although Defendant did not, in fact, sign his "Verified Rule 59 and 60 Motions,"[3] it appears that represented parties may be subject to sanctions even when the paper violating Rule 11 is signed only by their counsel. *See Egelhof v. Szulik*, 193 N.C. App. 612, 618, 668 S.E.2d 367, 372 (2008); *see also* N.C. Gen. Stat. § 1A-1, Rule 11 (2009) ("If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may

---

3. Wolfenden's signature instead appears on the verification page.

include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee."). However, where litigants are sanctioned,

> "the relevant inquiry is . . . whether the client made a reasonable inquiry to determine the legal sufficiency of the document." The [Supreme] Court, in defining what would constitute a "reasonable inquiry," stated: [T]he good faith reliance of [plaintiffs], as represented parties, on their attorneys' advice that their claims were warranted under the law is sufficient to establish an objectively reasonable belief in the legal validity of their claims.

*Taylor v. Collins*, 128 N.C. App. 46, 52-53, 493 S.E.2d 475, 480 (1997) (quoting *Bryson v. Sullivan*, 330 N.C. 644, 656, 662, 412 S.E.2d 327, 333, 336-37 (1992)).

Here, the trial court concluded that Defendant's Rule 59 and 60 motions were not well grounded in fact or law and were filed for an improper purpose, but it made findings of fact only in support of the legal sufficiency prong and referenced only Wolfenden's conduct:

> 20. On their face, Defendant's verified Rule 59 and 60 Motions, appear to the Court to be without legal justification. The Defendant's counsel was unable to provide any legal justification for the same at this hearing. The Defendant failed to exercise his right to appear and be heard at the June 17, 2009 custody and child support hearing, following the advice of his counsel. The Defendant's counsel chose not to obtain leave of court to continue the hearing or hold it open while she filed papers with the Court of Appeals. The Defendant's counsel also chose not to remain in the Courtroom for this case to begin on June 17, 2009, even though she had ample notice to appear on June 17, 2009 and even though she had already completed her filings and returned from the Court of Appeals before the hearing in this case.began on June 17, 2009.

Where the trial court made no findings in its Rule 11 sanctions order as to whether Defendant relied in good faith on Wolfenden's advice, the trial court's findings are insufficient to support its order of sanctions against Defendant.