KAREN McKINNEY, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF
MICHAEL EDWARD McKINNEY v. JAMES EVERETT RICHITELLI

No. 203PA02

(Filed 2 October 2003)

1. **Intestate Succession— bar to parents abandoning children—applies after child reaches majority**

   The statute barring the intestate succession rights of parents who wilfully abandon their children, N.C.G.S. § 31A-2, applies to any abandoned child dying intestate regardless of the child's age at death. A holding that the statute does not apply after the child reaches majority would effectively forgive the abandoning parent's dereliction and frustrate the statute's purpose, which was to discourage parents from shirking their responsibility of support to their children and to prevent an abandoning parent from reaping an undeserved bonanza.

2. **Intestate Succession— bar to parents abandoning children—abandonment—definition and evidence**

   A father abandoned his child within the meaning of N.C.G.S. § 31A-2 (which bars intestate succession by parents who abandon their children) where the father did not make support payments from the time his son was four until he was eighteen; defendant states that he was unemployed or in prison for a significant part of that time but he did not attempt to modify the support order; defendant did not see his son once in fifteen years; and he had no communication with his son, even though he was allowed to write letters from prison.

3. **Intestate Succession— bar to parents abandoning children—exception—resuming care and support**

   A defendant who had abandoned his child and who did not reestablish contact until his son was almost twenty years old could not benefit from N.C.G.S. § 31A-2(1), which contains an exception to the intestate succession bar for parents who resume care and maintenance of an abandoned child for a year before the child's death. While care pertains to love and concern for the child, maintenance refers to the financial support of a child during minority and must be renewed at least one year before the child reaches eighteen.

**McKINNEY v. RICHITELLI**

[357 N.C. 483 (2003)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 149 N.C. App. 973, 563 S.E.2d 100 (2002), reversing summary judgment entered by Judge Narley Cashwell, on 14 March 2001 in Superior Court, Wake County. Heard in the Supreme Court 3 December 2002.

*Pipkin, Knott, Clark & Berger, L.L.P., by Ashmead P. Pipkin, for plaintiff-appellant.*

*Huggard, Obiol & Blake, P.L.L.C., by John P. Huggard, for defendant-appellee.*

EDMUNDS, Justice.

Plaintiff Karen McKinney, acting individually and as the personal representative of the estate of her deceased son, Michael Edward McKinney[1] (Michael), brought this declaratory action against Michael's father, James Everett Richitelli (defendant), to determine the rights of the parties with respect to any proceeds of Michael's estate and to any proceeds of a wrongful death action brought on Michael's behalf. The Court of Appeals reversed the trial court's entry of summary judgment in favor of plaintiff. For the reasons discussed herein, we reverse the decision of the Court of Appeals.

Taken in the light most favorable to defendant, the evidence shows that plaintiff and defendant were married in 1976 and that their son, Michael, was born on 30 July 1977. Plaintiff and defendant were divorced in 1981. The district court entered a custody order awarding primary custody of Michael to plaintiff, while providing defendant visitation rights. Although the custody order required defendant to pay child support of $240.00 per month beginning on 1 October 1980, he failed to make any payments from 1 January 1981 through Michael's eighteenth birthday, 30 July 1995. Defendant admits that he had no contact or communication with Michael during this period, but explains that for most of these years, he was either incarcerated for theft and robbery convictions or suffering from drug and alcohol abuse.

Defendant's first contact with Michael after 1981 came when he wrote Michael in March 1997. At this time, Michael was nineteen years old, had been diagnosed with cancer, and would later file a medical malpractice action in which he alleged that a radiologist

---

1. Michael's name was originally Michael Edward Richitelli. He later changed his name to Michael Edward McKinney.

McKINNEY v. RICHITELLI

[357 N.C. 483 (2003)]

caused his illness. By defendant's accounts, after their initial contact, he and Michael visited with each other on at least three occasions and spoke regularly by telephone before Michael's death. Between October 1997 and December 1998, defendant sent Michael six checks totaling $3,150.

Michael's medical malpractice suit was filed on 13 May 1998, and he died intestate on 21 February 1999. After plaintiff was appointed as the personal representative of Michael's estate on 19 March 1999, she amended Michael's suit to include a wrongful death claim. While the wrongful death claim was pending, plaintiff on 6 July 2000 filed a declaratory judgment complaint against defendant, seeking a judicial determination of defendant's rights to any potential award resulting from the wrongful death suit. Defendant answered and moved to dismiss the declaratory judgment action pursuant to N.C. R. Civ. P. 12(b)(6). Following discovery, plaintiff filed a motion for summary judgment claiming she was entitled to judgment as a matter of law because defendant's behavior "during the period of 1981 through July 30, 1995 constituted a willful abandonment resulting in the loss of his right to intestate succession in any part of [Michael's] estate including wrongful death proceeds."

The motions were heard in the Superior Court, Wake County, on 31 January 2001. The key issue was the interpretation of N.C.G.S. § 31A-2, "Acts barring rights of parents," which provides as follows:

Any parent who has wil[l]fully abandoned the care and maintenance of his or her child shall lose all right to intestate succession in any part of the child's estate and all right to administer the estate of the child, except—

(1) Where the abandoning parent resumed its care and maintenance at least one year prior to the death of the child and continued the same until its death; or

(2) Where a parent has been deprived of the custody of his or her child under an order of a court of competent jurisdiction and the parent has substantially complied with all orders of the court requiring contribution to the support of the child.

N.C.G.S. § 31A-2 (2001). On 14 March 2001, the trial court denied defendant's motion to dismiss and granted plaintiff's motion for summary judgment by an order declaring "that pursuant to N.C.G.S.

§ 31A-2 defendant . . . has lost all right to intestate succession in any part of [Michael's] estate, including, but not limited to, the proceeds of any wrongful death claim because of his willful abandonment of the care and maintenance of [Michael] during his minority."

Defendant appealed, and in an unpublished opinion, the Court of Appeals reversed the trial court's judgment. *McKinney v. Richitelli*, 149 N.C. App. 973, 563 S.E.2d 100 (2002). The Court of Appeals noted that "our case law remains unclear whether a parent can resume a relationship with a child after the child reaches the age of majority and therefore fall within the first exception to N.C.G.S. § 31A-2," but concluded that a genuine issue of material fact existed as to whether defendant had resumed a relationship with Michael sufficient to invoke the exception set out in N.C.G.S. § 31A-2(1). The Court of Appeals' opinion and the briefs to this Court relied heavily on our order vacating *In re Estate of Lunsford*, 143 N.C. App. 646, 547 S.E.2d 483 (2001), a case similar to the one at issue, and remanding the case only for additional findings of fact by the trial court. *In re Estate of Lunsford*, 354 N.C. 571, 556 S.E.2d 292 (2001). However, in that order, we made no determinations as to questions of law. Because the record in the case at bar is sufficiently developed to allow us to reach the underlying issues, we do not consider arguments based on our order in *Lunsford* to be applicable.

Summary judgment may be granted in a declaratory judgment action "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178, 581 S.E.2d 415, 422 (2003) (quoting N.C.G.S. § 1A-1, Rule 56(c) (2001)). Plaintiff argues that the Court of Appeals erred in determining that a genuine issue of material fact existed as to whether defendant had resumed statutorily adequate care and maintenance of Michael.

In deciding whether summary judgment was proper in this case, we must undertake a three-fold inquiry. First, we must determine whether N.C.G.S. § 31A-2 applies after a child has reached his or her majority to prevent an abandoning parent from recovering through an offspring that was abandoned while a minor.[2] If so, we must next

---

2. Logically, N.C.G.S. § 31A-2 must apply to an abandonment that initially occurs while the child is a minor. After all, a parent cannot abandon an emancipated or adult child when the parent has no further responsibility for the child.

consider whether defendant abandoned Michael such that N.C.G.S. § 31A-2 precludes defendant from taking under intestate succession. Finally, if we find that defendant abandoned Michael, we must determine whether a parent who has abandoned his or her minor child may thereafter resume a parent-child relationship with the now-adult child and, by so doing, come under the exception set out in N.C.G.S. § 31A-2(1). *See* Heyward D. Armstrong, *In re Estate of Lunsford and Statutory Ambiguity: Trying to Reconcile Child Abandonment and the Intestate Succession Act*, 81 N.C. L. Rev. 1149 (2003).

[1] We observe at the outset that N.C.G.S § 31A-2 is ambiguous because nowhere in chapter 31A of the General Statutes is the term "child" defined, nor is the meaning of the term clear from its context. Thus "child" here could reasonably mean either a minor offspring or an offspring of any age. Although defendant contends that the word "child" as used in the body of the statute logically refers to a "minor child," he argues that the word "child" as used in the exception set out in N.C.G.S. § 31A-2(1) refers to a child regardless of age. Under defendant's interpretation, a parent may reconcile with his or her offspring after the child has reached majority and thereafter take if the adult child dies intestate. In contrast, plaintiff argues that under N.C.G.S. § 31A-2 the continuous abandonment of a minor child by a parent permanently terminates that parent's right to participate in the intestate share when the child reaches his or her majority. Under plaintiff's interpretation, the exception set out in N.C.G.S. § 31A-2(1) can take effect only if the reconciliation occurs while the child is still a minor.

In interpreting such a statutory ambiguity, we adhere to the following rules of construction:

> Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning. *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 232 S.E.2d 184 (1977). But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will. *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E.2d 797 (1948). The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent. *Buck v. Guaranty Co.*, 265 N.C. 285, 144 S.E.2d 34 (1965). This intent "must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought

to be remedied." *Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967).

*Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990).

Our analysis begins with *Avery v. Brantley*, 191 N.C. 396, 131 S.E. 721 (1926). In *Avery*, the father abandoned his daughter, and the issue before us was the father's ability to recover in the negligence suit brought when his intestate daughter was killed in an accident. We considered two statutes then in effect. One statute, 1 N.C. Cons. Stat. § 189 (1920), terminated the rights of a natural parent to the care, custody, and services of a child once the parent gave up the child for adoption. The other statute, 1 N.C. Cons. Stat. 137(6) (Supp. 1924), provided that a parent would inherit if a child died intestate. This second statute did not contain a provision limiting its operation when a parent had abandoned the child. Because the child in *Avery* had not been adopted, we held that the statutes could not be interpreted *in pari materia* and that the statute allowing the parents to inherit from their intestate daughter controlled. *Id.* at 400, 131 S.E. at 722. Accordingly, we concluded that the mother and father shared in the proceeds of the child's estate, even though the father had abandoned the child. *Id.* Thereafter, the General Assembly amended 137(6) to provide,

> [i]f, in the lifetime of its father and mother, a child dies intestate, without leaving husband, wife or child, or the issue of a child, its estate shall be equally divided between the father and mother. If one of the parents is dead at the time of the death of the child, the surviving parent shall be entitled to the whole of the estate. . . . Provided, that a parent, or parents, who has willfully abandoned the care, custody, nurture and maintenance of such child to its kindred, relatives or other person, shall forfeit all and every right to participate in any part of said child's estate under the provisions of this section.

Act of Mar. 9, 1927, ch. 231, 1927 N.C. Sess. Laws 591 (amending 1 N.C. Cons. Stat. § 137(6), later recodified as N.C.G.S. § 28-149(6) (1943).

With the adoption in 1960 of a new Intestate Succession Act, N.C.G.S. ch. 29, N.C.G.S. § 28-149(6) was abolished. The General Statutes Commission, "cognizant of the inadequate statutory law relating to the inheritance of property by unworthy heirs," thereupon

created a special committee to draft new legislation addressing the topic. Report of Drafting Committee to the General Statutes Commission, Special Report of the General Statutes Commission on an Act to Be Entitled "Acts Barring Property Rights," at 1 (Feb. 8, 1961). The committee responded by drafting a bill (enacted by the General Assembly and now codified as N.C.G.S. § 31A-2) that, among other provisions, prohibited abandoning parents from recovering through their intestate children. The committee stated that the purpose of this section was to "revise, broaden, and reintroduce" abolished N.C.G.S. § 28-149(6). *Id.* at 4. The committee reasoned that "[i]t seems very inequitable to allow a parent who has abandoned his child to inherit from such child when the child dies intestate." *Id.* However, the committee also provided two exceptions that allowed an abandoning parent to share in the intestate's estate. *Id.* The first of these exceptions encouraged an abandoning parent to resume his or her duties of care and maintenance of the child in an effort to renew the parent-child relationship. *See* N.C.G.S. § 31A-2(1).

It is apparent from this history that the legislative intent behind N.C.G.S. § 31A-2 was both to discourage parents from shirking their responsibility of support to their children and to prevent an abandoning parent from reaping an undeserved bonanza. Were we to hold that section 31A-2 has no application once a child reaches majority, a parent who has abandoned his or her child would nevertheless automatically inherit if the still-abandoned child died intestate after reaching the age of eighteen. Such an interpretation would frustrate the statute's purpose and effectively forgive the abandoning parent's dereliction. Therefore, we hold that N.C.G.S. § 31A-2 applies to any abandoned child dying intestate regardless of the child's age at death.

[2] We next consider whether defendant abandoned Michael. While we have observed the difficulty of formulating a uniform definition of the term, we have explained "abandonment" of a child as "wil[l]ful or intentional conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962); *see also In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997).

Abandonment has also been defined as wil[l]ful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial

affection, and wil[l]fully neglects to lend support and mainte-
nance, such parent relinquishes all parental claims and aban-
dons the child.

*Pratt v. Bishop*, 257 N.C. at 501, 126 S.E.2d at 608; *see also Lessard
v. Lessard*, 77 N.C. App. 97, 100-01, 334 S.E.2d 475, 477 (1985) (utiliz-
ing the *Pratt* definitions of abandonment in the context of N.C.G.S.
§ 31A-2), *aff'd per curiam*, 316 N.C. 546, 342 S.E.2d 522 (1986).
"Maintenance" or support refers to a parent's financial obligation to
provide support during the child's minority. *See generally Wells v.
Wells*, 227 N.C. 614, 44 S.E.2d 31 (1947).

Applying these precepts to this case, the evidence, even viewed
in the light most favorable to defendant, demonstrates that defendant
abandoned Michael. From the time Michael was four until after his
eighteenth birthday, defendant violated the court's order by failing to
make any child support payments. Both in her brief and at oral argu-
ment, plaintiff claimed defendant owed approximately $42,000 in
arrearages accrued during Michael's minority. Although defendant
states that for a significant amount of that time he was either unem-
ployed or in prison, at no point during this period did defendant
attempt to modify the child support order. Even though defendant
was entitled under the support order to visit Michael on alternate
weekends, holidays, and two weeks in the summer, he did not see his
son even once in fifteen years. Defendant admits that he had no com-
munication with Michael at all during this period even though he was
allowed to write letters from prison during his periods of incarcera-
tion. These findings demonstrate "wil[l]ful or intentional conduct on
the part of the parent which evinces a settled purpose to forego all
parental duties and relinquish all parental claims to the child." *Pratt
v. Bishop*, 257 N.C. at 501, 126 S.E.2d at 608. Thus, we hold that
defendant abandoned Michael as contemplated by N.C.G.S. § 31A-2.

[3] Finally, we must determine whether defendant is entitled to the
benefit of the exception provided in N.C.G.S. § 31A-2(1). Defendant
argues that this exception applies to any abandoned child, whether or
not that child has reached majority. He reasons that although the duty
of maintenance or financial support ends at majority, the duty of care
applies to a child of any age. Because he provided sufficient evidence
to establish that he resumed the care and maintenance of Michael at
least one year before Michael's death, defendant argues that his con-
duct in the final two years of Michael's life restored defendant's right
to inheritance. We find defendant's arguments unpersuasive.

The critical inquiry as to N.C.G.S. § 31A-2(1) is not whether a parent can resume a relationship with a child, but whether a parent "resumed its care and maintenance at least one year prior to the death of the child and continued the same until its death." N.C.G.S. § 31A-2(1). The exception requires that the parent resume both the "care *and* maintenance" of the child. *Id.* (emphasis added). These requirements may not be read in the disjunctive. As stated above, while "care" pertains to love and concern for the child, "maintenance" refers to the financial support of a child during minority. *See generally Wells v. Wells*, 227 N.C. 614, 44 S.E.2d 31. Our jurisprudence establishes that "[t]he authority of the court to require support for a normal child ceases when the legal obligation to support no longer exists. The parents' duty to support . . . cease[s] upon emancipation." *Shoaf v. Shoaf*, 282 N.C. 287, 290, 192 S.E.2d 299, 302 (1972). "The age of emancipation is precisely fixed—eighteen." *Id.* at 291, 192 S.E.2d at 303. Although a parent may have a duty of support of an older child who is still in school, N.C.G.S. § 50-13.4(c)(2) (2001), there is no evidence to indicate this provision applies here. In the case at bar, defendant did not reestablish contact with Michael until he was almost twenty years old. Even assuming that defendant presented sufficient evidence that he resumed the care of Michael, defendant cannot resume the maintenance of Michael because his legal obligation to do so ceased at eighteen.

We held above that N.C.G.S. § 31A-2 pertains to the estate of a child of any age. Under the logic of that analysis—that a parent who abandons a child should benefit from the death of the child only if the parent has resumed a parental relationship with the child—an abandoning parent who seeks to come under the exception in N.C.G.S. § 31A-2(1) must renew both the care and the maintenance of the child during the child's minority, when care and maintenance are most valuable. *See Williford v. Williford*, 288 N.C. 506, 510, 219 S.E.2d 220, 223 (1975) (although issue not squarely presented, we held that "the plaintiff father, having abandoned the deceased *when the latter was a minor child,* may not now share in the proceeds of the settlement of the claim for wrongful death now in the hands of the administratrix") (emphasis added). Under the terms of the statute, the care and maintenance must continue for a year before the child's death. Therefore, we hold that, in order to benefit from this provision, a parent must renew such care and maintenance at least one year before the child reaches the age of eighteen.

This holding not only follows from the preceding historical and textual analysis, it is also consistent with our understanding of the General Assembly's overall intent. When an adult or emancipated child discerns that a parent who had previously abandoned him or her now sincerely seeks reconciliation, the child is free to execute a will making provisions for the no-longer-wayward parent. Although we acknowledge that this argument is of limited application to the facts before us because any recovery for Michael's wrongful death would pass under the laws of intestate succession even if he had written a will, *see* N.C.G.S. § 28A-18-2(a) (2001), the larger principle that the abandoned child has the power to prevent a reconciled parent from being excluded from the child's estate informs our analysis. We believe that the General Assembly has adequately demonstrated an unwillingness to allow an abandoning parent to take from an abandoned adult child as the result of a mechanical application of the rules of intestate succession.

We hold that summary judgment in favor of plaintiff was proper in this case. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.