DAVIS, Judge.
 

 *43
 
 Elizabeth Shearin and the Estate of Chekeria Renae Reid (collectively "Shearin") brought this action seeking a declaratory judgment that defendant Oscar Reid lost his right to intestate succession in the estate of his deceased daughter by virtue of his willful abandonment of her care and maintenance as provided for in N.C. Gen. Stat. § 31A-2.
 

 *44
 
 Following the jury's verdict in favor of Reid, Shearin filed a motion to set aside the verdict and for a new trial pursuant to Rule 59 of the North Carolina Rules of Civil Procedure, which was denied. On appeal, Shearin argues that the trial court erred by (1) denying her motion for recusal; (2) granting Reid's motions
 
 in limine
 
 ; and (3) failing to give certain jury instructions requested by Shearin. After a thorough review of the record and applicable law, we affirm.
 

 Factual and Procedural Background
 

 Elizabeth Shearin and Oscar Reid were never married but had a child together. Their daughter, Chekeria, was born in 1992. The couple separated shortly after Chekeria's birth.
 

 On 19 December 2003, Reid signed a Voluntary Support Agreement and Order (the "Support Order") requiring him to pay child support for Chekeria. Under the terms of the Support Order, Reid was required to pay $79.00 per month in child support beginning 1 January 2004. The Support Order was modified by an order dated 8 November 2005
 
 [1]
 
 to increase his monthly child support obligation to $123.00. Because he was in arrears with respect to his child support obligations when his daughter reached the age of eighteen, Reid continued to make child support payments until he completed his payment
 
 *384
 
 obligations in July 2014. Chekeria was killed in a car accident on 31 March 2015 when she was twenty-two years old.
 

 On 18 September 2015, Shearin filed a civil action against Reid in Guilford County Superior Court seeking a declaratory judgment that he had "willfully abandoned his duty to provide reasonable and adequate support" for his daughter and thus had "lost all rights to intestate succession in any part of [Chekeria's] estate" or to "recover any and all wrongful death proceeds." Reid filed an answer on 15 October 2015 alleging that he had consistently made child support payments following the entry of the Support Order and was entitled to "an immediate distribution of fifty percent ... of all gross proceeds received by the [e]state in this matter."
 

 The case was set for trial beginning on 1 August 2016 before the Honorable Patrice A. Hinnant. On that date, Shearin filed a motion to recuse Judge Hinnant on the grounds that she had "expressed prejudice against the Plaintiff and her counsel and that she has previously expressed ... an opinion as to the merits of the case, casting doubt on
 
 *45
 
 her ability to be impartial." Shearin's motion further alleged that Reid's counsel "may have played a significant role in her campaign which reasonably questions [Judge Hinnant's] impartiality." That same day, a hearing was held on various pre-trial matters, including Shearin's motion to recuse. Following the arguments of counsel, the trial court denied the recusal motion.
 

 The court then addressed three motions
 
 in limine
 
 made by Reid. In his first motion, Reid sought to exclude any mention at trial of potential proceeds or distributions from a wrongful death lawsuit related to Chekeria's death. In support of the motion, Reid argued that the central issue in the case was whether he had abandoned his daughter and that the potential distribution of wrongful death proceeds was irrelevant to the issue of abandonment. The trial court initially reserved ruling on this motion but ultimately granted it during trial.
 

 Reid's second motion
 
 in limine
 
 requested the exclusion of expert testimony from an economist offered by Shearin regarding the average cost of raising a child born in 1992. Reid contended that such testimony would not assist the jury in determining the issue of abandonment because he had paid child support pursuant to the North Carolina Child Support Guidelines. Reid further argued that "[i]t would confuse the jury for an economist to come in and try to explain why that was inadequate." The trial court granted this motion.
 

 In his final motion
 
 in limine
 
 , Reid sought to exclude the use during trial of (1) the phrase "adequate maintenance" as it pertained to his child support payments; and (2) the term "deadbeat dad." The trial court also granted this motion.
 

 A jury trial was held beginning on 2 August 2016. On 5 August 2016, the jury reached the following verdict:
 

 ISSUE NUMBER 1 :
 

 Did the respondent, Oscar Reid, willfully abandon the care and maintenance of his child, Chekeria Renae Reid?
 

 ANSWER: Yes
 

 ISSUE NUMBER 2:
 

 If you should so find, then did the respondent resume and continue his care and maintenance at least one year prior to the 18
 
 th
 
 birthday of the child?
 

 ANSWER: Yes
 

 *46
 
 Based on the jury's verdict, the trial court entered a judgment on 12 August 2016 stating that Reid possessed the right to intestate succession in Chekeria's estate. Shearin filed a motion for a new trial on 18 August 2016. On 19 September 2016, Shearin also filed a renewed motion to recuse Judge Hinnant. In addition to restating the grounds set out in her initial recusal motion, Shearin alleged in the renewed motion that "the Judge and her mother celebrate[ ] the Christmas holiday at defense counsel's home on a regular basis" and that "the Judge and defense counsel's wife belong to the same social club and sorority." On 24 October 2016, the trial court entered an order denying Shearin's post-trial motions. Shearin filed a notice of appeal on 18 November 2016.
 

 Analysis
 

 Shearin contends in this appeal that the trial court committed reversible error in
 
 *385
 
 denying her motion under Rule 59 for a new trial and her renewed motion to recuse Judge Hinnant. However, Shearin has appealed only from the trial court's 24 October 2016 order on her post-trial motions and has not appealed from the underlying 12 August 2016 judgment entered by the court following the jury's verdict. Thus, only the trial court's 24 October 2016 order is presently before us in this appeal.
 
 See
 

 Von Ramm v. Von Ramm
 
 ,
 
 99 N.C. App. 153
 
 , 156,
 
 392 S.E.2d 422
 
 , 424 (1990) ("Notice of appeal from denial of a motion to set aside a judgment which does not also specifically appeal the underlying judgment does not properly present the underlying judgment for our review." (citation omitted) ).
 

 Rule 59 states, in pertinent part, as follows:
 

 (a)
 
 Grounds.
 
 -A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
 

 (1) Any irregularity by which any party was prevented from having a fair trial;
 

 (2) Misconduct of the jury or prevailing party;
 

 (3) Accident or surprise which ordinary prudence could not have guarded against;
 

 (4) Newly discovered evidence material for the party making the motion which he could not, with reasonable diligence, have discovered and produced at the trial;
 

 *47
 
 (5) Manifest disregard by the jury of the instructions of the court;
 

 (6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
 

 (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;
 

 (8) Error in law occurring at the trial and objected to by the party making the motion, or
 

 (9) Any other reason heretofore recognized as grounds for new trial.
 

 N.C. R. Civ. P. 59(a).
 

 A motion for a new trial pursuant to Rule 59 is generally addressed to the sound discretion of the trial court.
 
 Harrell v. Sagebrush of N.C., LLC
 
 ,
 
 191 N.C. App. 381
 
 , 384,
 
 663 S.E.2d 444
 
 , 446 (2008),
 
 disc. review denied
 
 ,
 
 363 N.C. 652
 
 ,
 
 684 S.E.2d 889
 
 (2009). Appellate review of the trial court's ruling on a Rule 59 motion "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge."
 
 Worthington v. Bynum
 
 ,
 
 305 N.C. 478
 
 , 482,
 
 290 S.E.2d 599
 
 , 602 (1982). "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof."
 
 Id.
 
 at 484-85,
 
 290 S.E.2d at 604
 
 . Moreover, "an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice."
 
 Id.
 
 at 487,
 
 290 S.E.2d at 605
 
 .
 

 I. Motion to Recuse
 

 Shearin first argues that the trial court erred in denying her motion to recuse. Specifically, she contends that Judge Hinnant was unable to rule impartially in her case and should have either recused herself or referred Shearin's recusal motion to another judge for disposition.
 

 Canon 3C of the North Carolina Code of Judicial Conduct provides, in pertinent part, as follows:
 

 (1) On motion of any party, a judge should disqualify himself/herself in a proceeding in which the judge's impartiality may reasonably be questioned, including but not limited to instances where:
 

 *48
 
 (a) The judge has a personal bias or prejudice concerning a party. ...
 

 Code of Judicial Conduct, Canon 3C(1)(a).
 

 The burden of proof "is on the party moving for recusal to demonstrate objectively that grounds for disqualification actually exist."
 
 State v. Kennedy
 
 ,
 
 110 N.C. App. 302
 
 , 305,
 
 429 S.E.2d 449
 
 , 451 (1993) (quotation
 
 *386
 
 marks and citation omitted). This burden may be met by a showing of "substantial evidence that there exists such a personal bias, prejudice, or interest on the part of the judge that he would be unable to rule impartially, or a showing that the circumstances are such that a reasonable person would question whether the judge could rule impartially."
 
 Harrington v. Wall
 
 ,
 
 212 N.C. App. 25
 
 , 28,
 
 710 S.E.2d 364
 
 , 367 (quotation marks and citation omitted).
 

 This Court has held that evidence of a strained professional relationship between a trial judge and an attorney does not-without more-require recusal.
 
 Id.
 
 at 34-35,
 
 710 S.E.2d at 370-71
 
 . In
 
 Harrington
 
 , the defendant alleged that the trial judge "appeared to have developed a strong personal animosity" towards defense counsel stemming from the attorney's conduct during a recent judicial campaign.
 
 Id
 
 . at 34,
 
 710 S.E.2d at 370
 
 (quotation marks and brackets omitted). We noted that "[o]ther than the allegations set forth in Defendant's verified motion to recuse, Defendant presented no actual evidence supporting his contention that [the trial judge] harbored a personal animosity towards [defense counsel]."
 

 Id.
 

 This Court concluded that the defense attorney and trial judge "had a professional relationship which was, at worst, strained by the actions and demands [defense counsel] made during her previous campaign, as well as during the proceedings, and which did not warrant recusal."
 
 Id.
 
 at 35,
 
 710 S.E.2d at 370-71
 
 .
 

 Here, Shearin asserts both that Judge Hinnant displayed hostility toward her attorney during trial and that Reid's attorney served as chairman of a political action committee that worked to elect Judge Hinnant. With regard to the former assertion, she points to an exchange during a pre-trial conference in which Judge Hinnant cautioned Shearin's attorney that if he was unable to "curb enthusiasm or to follow the rules of the Court," then Judge Hinnant reserved the options of either stopping the trial or contacting the State Bar. We find the analysis in
 
 Harrington
 
 to be instructive in the present case. Shearin has presented no evidence of actual bias or an inability on the part of Judge Hinnant to be impartial.
 

 Regarding Shearin's assertions of Judge Hinnant's alleged bias in favor of Reid's counsel because of his assistance in her campaign, Reid's
 
 *49
 
 counsel responded by arguing that "based on that criteria, [I] could never practice law in these courtrooms and the surrounding counties." We are satisfied that the mere fact that Reid's counsel may have participated in Judge Hinnant's campaign was insufficient to require her recusal in this case.
 
 [2]
 
 Thus, because we conclude that Shearin failed to present substantial evidence of bias or prejudice on the part of Judge Hinnant such that "a reasonable person would question whether [she] could rule impartially,"
 
 id.
 
 at 28,
 
 710 S.E.2d at 367
 
 (citation omitted), we hold that the trial court properly denied Shearin's pre-trial motion to recuse.
 

 We likewise find no merit in Shearin's renewed motion to recuse filed on 19 September 2016. In this renewed motion, Shearin further alleged that Judge Hinnant and her mother regularly celebrated the Christmas holiday at the home of Reid's attorney and that she belonged "to the same social club and sorority" as the wife of Reid's counsel. Shearin contends that these new allegations, taken together with the allegations in her original motion, were sufficient to require Judge Hinnant's recusal. We disagree. Shearin has failed to put forth evidence of actual bias or circumstances such that a reasonable person would question Judge Hinnant's ability to rule impartially. Accordingly, the court did not err in denying Shearin's renewed motion to recuse.
 
 [3]
 

 *387
 

 II. Motions
 
 in Limine
 

 A. First Motion
 
 in Limine
 

 Shearin argues that the trial court erred in granting Reid's first motion
 
 in limine
 
 , which sought the exclusion of any mention of potential proceeds or distributions from a wrongful death lawsuit related to Chekeria's death. She contends that the trial court's ruling was prejudicial in that it limited her ability to argue at trial that Reid was "motivated by greed in an attempt to get an undeserved and unearned windfall share in his daughter's estate."
 

 "A motion
 
 in limine
 
 seeks pretrial determination of the admissibility of evidence proposed to be introduced at trial; its determination
 
 *50
 
 will not be reversed absent a showing of an abuse of the trial court's discretion."
 
 Warren v. Gen. Motors Corp.
 
 ,
 
 142 N.C. App. 316
 
 , 319,
 
 542 S.E.2d 317
 
 , 319 (2001) (citation omitted). In our review, "we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record."
 
 State v. Whaley
 
 ,
 
 362 N.C. 156
 
 , 160,
 
 655 S.E.2d 388
 
 , 390 (2008) (citation omitted).
 

 During the pre-trial hearing, the following exchange occurred between the trial court and Reid's counsel:
 

 [THE COURT]: I believe raising the issue of entitlement to the recovery ... much like in a personal injury claim, I would think, and that you're restricted from referring to insurance coverage and the extent of the liability that is available for payment. Is that-
 

 ....
 

 [REID'S COUNSEL]: Judge, this is why this was made. The issue involving the wrongful death of this child, the amount of money recovered, who is to get the money. How it's going to be distributed has nothing to do with whether this man abandoned his child. This comes into existence when she's 22 years old, when she dies. Whether or not he's abandoned this child has already happened. ... The question of abandonment is the issue, not how much the wrongful proceeds-how much the proceeds were in a wrongful death case, who is going to get it, and what the distribution's going to be is all irrelevant.
 

 ....
 

 [THE COURT]: The proclivity of the Court is to allow [the motion
 
 in limine
 
 ] in the sense that there will not be made any mention of an amount or what has happened to any money that might have already been recovered, in much the same way that it would be an issue of him trying to get to the money.
 

 Although Shearin's counsel made no direct mention of wrongful death proceeds during his closing argument, we note that he was permitted to make the following statement during his final argument to the jury: "This is Oscar Reid exercising American greed and trying to portray himself as something and get something far more than he was willing to give."
 

 Thus, Shearin's counsel was not prevented from arguing greed as a motivating factor behind Reid's conduct. Therefore, even assuming-without
 
 *51
 
 deciding-that the trial court's ruling on Reid's motion
 
 in limine
 
 constituted error, Shearin has failed to show that any such error was sufficiently prejudicial so as to warrant a new trial.
 
 See
 

 In re Chasse
 
 ,
 
 116 N.C. App. 52
 
 , 60,
 
 446 S.E.2d 855
 
 , 859 (1994) ("An error in the exclusion of evidence ... is not ground for a new hearing unless the exclusion amounted to the denial of a substantial right. To show that he was denied such a right, an appellant must show that the error prejudiced him and that it is likely that a different result would have ensued had the error not been committed." (internal citations omitted) ).
 

 B. Second Motion
 
 in Limine
 

 Shearin also challenges the trial court's granting of Reid's second motion
 
 in limine
 
 seeking to exclude the expert testimony of an economist from the University of North Carolina at Greensboro. Shearin sought to elicit testimony from the economist that would "assist the trier of fact with what the cost of raising a child born in 1992 would be."
 

 The admissibility of expert testimony is governed by
 
 *388
 
 Rule 702 of the North Carolina Rules of Evidence, which states, in pertinent part, as follows:
 

 (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
 

 (1) The testimony is based upon sufficient facts or data.
 

 (2) The testimony is the product of reliable principles and methods.
 

 (3) The witness has applied the principles and methods reliably to the facts of the case.
 

 N.C. R. Evid. 702(a).
 

 In the present case, the ultimate issue to be determined by the jury was whether Reid had abandoned Chekeria for purposes of N.C. Gen. Stat. § 31A-2 and, if so, whether he resumed his support of her one year or more prior to her death. N.C. Gen. Stat. § 31A-2 provides as follows:
 

 Any parent who has willfully abandoned the care and maintenance of his or her child shall lose all right to intestate
 
 *52
 
 succession in any part of the child's estate and all right to administer the estate of the child, except-
 

 (1) Where the abandoning parent resumed its care and maintenance at least one year prior to the death of the child and continued until its death; or
 

 (2) Where a parent has been deprived of the custody of his or her child under an order of a court of competent jurisdiction and the parent has substantially complied with all orders of the court requiring contribution to the support of the child.
 

 N.C. Gen. Stat. § 31A-2 (2017).
 

 At the pre-trial hearing, Reid argued that because he paid child support for Chekeria according to the North Carolina Child Support Guidelines, any testimony from an economist as to the average cost of raising a child would only confuse the jury. Citing our Supreme Court's opinion in
 
 In re Estate of Lunsford
 
 ,
 
 359 N.C. 382
 
 ,
 
 610 S.E.2d 366
 
 (2005), Shearin contended in response that her economist would assist the jury in determining whether Reid's child support payments were "adequate." The trial court granted Reid's motion.
 

 In
 
 Lunsford
 
 , a father seeking to inherit from the estate of his deceased daughter lost custody of the child pursuant to a divorce decree that did not require him to pay child support.
 

 Id.
 

 at 391
 
 ,
 
 610 S.E.2d at 372
 
 . The father argued that even if it was determined that he had abandoned his child, he was nevertheless entitled to inherit from her estate pursuant to N.C. Gen. Stat. § 31A-2(2) because he had been deprived of custody by "order of a court of competent jurisdiction" and had "substantially complied with all orders of the court requiring contribution to the support of the child."
 

 Id.
 

 at 386
 
 ,
 
 610 S.E.2d at 369
 
 (quotation marks and citation omitted).
 

 Our Supreme Court ruled that N.C. Gen. Stat. § 31A-2(2) was inapplicable based on the facts of
 
 Lunsford
 
 because "[b]y its express language ... the statutory exception may not be invoked where a court order has not required the payment of child support."
 

 Id.
 

 at 392
 
 ,
 
 610 S.E.2d at 372
 
 (quotation marks and brackets omitted). The Court further stated that in cases that do not involve the payment of child support pursuant to a court order, the abandonment issue must be determined by examining whether the parent "voluntarily provide[d]
 
 adequate
 
 care and maintenance for purposes of N.C.G.S. § 31A-2."
 

 Id.
 

 at 393
 
 ,
 
 610 S.E.2d at 373
 
 (quotation marks omitted and emphasis added).
 

 *53
 
 We believe that Shearin's reliance on
 
 Lunsford
 
 is misplaced.
 
 Lunsford
 
 concerned a scenario in which a court order existed that deprived a parent of custody but did not require the payment of child support.
 

 Id.
 

 at 391
 
 ,
 
 610 S.E.2d at 372
 
 . The present case presents the opposite situation. Here, although Reid was required to pay child support, he was not deprived of the custody of his daughter pursuant to a court order. Thus, because Reid was never deprived of the custody of Chekeria, subsection (2) of N.C. Gen. Stat. § 31A-2 is inapplicable. Indeed, Reid
 
 *389
 
 argued at trial that he was entitled to the exception contained in subsection (1) of the statute because he resumed his care and maintenance of Chekeria more than one year prior to her death by making child support payments.
 

 Nevertheless, the Supreme Court's analysis in
 
 Lunsford
 
 is instructive. The Court stated that "a parent who limits his role in his child's life to the parameters set out by a court has not shirked his responsibility to that child" and that "a parent should not be penalized for his or her failure to exceed the terms of a judicial child support order."
 

 Id.
 

 at 392-393
 
 ,
 
 610 S.E.2d at 373
 
 (quotation marks, brackets, and citation omitted). Furthermore, this Court has held that "[c]hild support set consistent with the [North Carolina Child Support Guidelines] is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support."
 
 Hendricks v. Sanks
 
 ,
 
 143 N.C. App. 544
 
 , 549,
 
 545 S.E.2d 779
 
 , 782 (2001) (quotation marks and citation omitted).
 

 Therefore, given the existence of the child support orders, the testimony of Shearin's expert witness regarding the cost of raising a child born in 1992 would likely have confused or misled the jury. As such, we conclude the trial court did not abuse its discretion in excluding this testimony.
 
 See
 

 State v. McGrady
 
 ,
 
 368 N.C. 880
 
 , 895,
 
 787 S.E.2d 1
 
 , 12 (2016) (upholding trial court's ruling excluding expert testimony because it "would not assist the jury as required by Rule 702(a)").
 

 C. Third Motion
 
 in Limine
 

 In addition, Shearin contends that the trial court improperly granted Reid's third motion
 
 in limine
 
 to exclude use of the phrase "adequate maintenance" as it pertained to Reid's child support payments and to exclude all references to the term "deadbeat dad." However, Shearin makes no actual argument in her appellate brief as to
 
 why
 
 the trial court's ruling on this motion was erroneous or how she was prejudiced by it. Instead, her brief merely states that "it is difficult to glean the substance and basis for the court's granting of the defendant's motion."
 

 *54
 
 North Carolina Rule of Appellate Procedure 28(b)(6) provides, in relevant part, that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6). Thus, we deem Shearin's assertion of error regarding the trial court's ruling on Reid's third motion
 
 in limine
 
 to be abandoned.
 

 III. Jury Instructions
 

 A. First Requested Jury Instruction
 

 Shearin next contends that the trial court erred in denying her first proposed jury instruction, which included a discussion of the legislative intent underlying N.C. Gen. Stat. § 31A-2 and was submitted by her to the trial court in writing on 3 August 2016. She also argues that the court erred in denying her alternative request at the charge conference that her counsel be permitted to argue the legislative intent of N.C. Gen. Stat. § 31A-2 to the jury during his closing argument.
 

 As a general proposition, a requested jury instruction should be given when "(1) the requested instruction was a correct statement of the law and (2) was supported by the evidence, and that (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested and (4) such failure likely misled the jury."
 
 Liborio v. King
 
 ,
 
 150 N.C. App. 531
 
 , 534,
 
 564 S.E.2d 272
 
 , 274 (citation omitted),
 
 disc. review denied
 
 ,
 
 356 N.C. 304
 
 ,
 
 570 S.E.2d 726
 
 (2002). "Failure to give a requested and appropriate jury instruction is reversible error if the requesting party is prejudiced as a result of the omission."
 
 Outlaw v. Johnson
 
 ,
 
 190 N.C. App. 233
 
 , 243,
 
 660 S.E.2d 550
 
 , 559 (2008) (citation omitted).
 

 Here, the specific instruction requested by Shearin regarding N.C. Gen. Stat. § 31A-2 was virtually identical to the instruction actually given to the jury except for the following additional language requested by her that the trial court declined to include:
 

 The legislative intent behind N.C.G.S. § 31A-2 was both to discourage parents from shirking their responsibility of support
 
 *390
 
 to their children and to prevent an abandoning parent from reaping an undeserved bonanza. The General Assembly has demonstrated its unwillingness to allow an abandoning parent to take from an abandoned adult child as the result of a mechanical application of the rules of intestate succession.
 

 We do not believe that the trial court abused its discretion in refusing to include this additional language-taken from our Supreme Court's
 
 *55
 
 opinion in
 
 McKinney v. Richitelli
 
 ,
 
 357 N.C. 483
 
 , 489, 492,
 
 586 S.E.2d 258
 
 , 263, 265 (2003) -in its instructions. Based on the instruction the trial court actually gave, the jury was properly informed as to the substance of N.C. Gen. Stat. § 31A-2. Moreover, Shearin has failed to direct us to any legal authority supporting the proposition that a trial court commits reversible error by declining to instruct the jury on the legislative intent behind a statute. Therefore, we cannot say that Judge Hinnant abused her discretion in denying Shearin's requested jury instruction on this issue.
 
 [4]
 

 B. Second Requested Jury Instruction
 

 Finally, Shearin asserts that the trial court improperly denied her request that the court instruct the jury "to accept as conclusive" the 8 November 2005 order that found Reid had the ability to pay $123.00 per month in child support. Shearin's requested instruction stated, in pertinent part, as follows:
 

 [T]he Plaintiff respectfully request[s] that the Court instructs [sic] the jury to accept as conclusive that the Court entered an Order on [November 8], 2005, and that the Defendant, Oscar T. Reid, was found to have the "ability to pay" child support in the amount of $123.00, and has willfully failed to comply with the orders of the Court, and that the doctrines of res judicata and collateral estoppel (or issues [sic] preclusion) precludes Oscar T. Reid from re-litigating the issues regarding his "ability to pay" which was decided in the prior proceeding.
 

 "Under the doctrine of collateral estoppel, or issue preclusion, a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties[.]"
 
 Williams v. Peabody,
 

 217 N.C. App. 1
 
 , 6,
 
 719 S.E.2d 88
 
 , 93 (2011) (quotation marks and citation omitted). The party asserting collateral estoppel must show that "the earlier suit resulted in a final judgment on the merits" and that "the issue in question was identical to an issue actually litigated and necessary to the judgment[.]"
 

 Id.
 

 (quotation marks and citation omitted). We have emphasized that "[a] very close examination of matters
 
 *56
 
 actually litigated must be made in order to determine if the underlying issues are in fact identical; if they are not identical, then the doctrine of collateral estoppel does not apply."
 

 Id.
 

 (quotation marks, brackets, and citation omitted).
 

 We note that the trial court did take judicial notice of the fact that Reid's child support was paid pursuant to a voluntary support agreement, instructing the jury as follows:
 

 [THE COURT]: The Court has taken judicial notice that the child support was paid pursuant to a voluntary support agreement calculated pursuant to the North Carolina child support guidelines and a court order. The law provides that the Court may take judicial notice of certain facts that are so well-known or well-documented that they are not subject to reasonable dispute. When the Court takes judicial notice of a fact, neither party is required to offer proof as to such a fact. Therefore, you will accept as conclusive that the child support was paid pursuant to a voluntary support agreement and court order.
 

 The only issue actually adjudicated by the 8 November 2005 order was the increase in
 
 *391
 
 Reid's child support obligation to a monthly amount of $123.00 as of that date. At trial, Reid never disputed that he was required to pay this monthly amount following the entry of that order. However, the 8 November 2005 order cannot logically be construed as an adjudication that any
 
 subsequent
 
 failure by Reid to pay the full amount owed in a given month was willful. Therefore, because Reid was not attempting to relitigate issues actually decided in the 8 November 2005 order, principles of collateral estoppel did not require the trial court to give Shearin's requested instruction.
 

 Moreover, Reid's entire child support file-including the 8 November 2005 order-was entered into evidence. Thus, the contents of that order were before the jury. A chart detailing Reid's level of compliance with his child support obligations was also entered into evidence.
 

 In addition, the jury was able to hear Reid's own testimony concerning fluctuations in his employment status as well as his explanation for his failure to make full payments each month. His testimony on this subject included the following:
 

 [REID'S COUNSEL]: Now during this time-and you're working at Cracker Barrel and all these jobs-did you ever come down to the child support office personally and pay money?
 

 *57
 
 [REID]: No, I didn't.
 

 [REID'S COUNSEL]: How was your money paid?
 

 [REID]: Out of my check.
 

 [REID'S COUNSEL]: Was it deducted, like taxes?
 

 [REID]: Yes. They got theirs before I got mine.
 

 [REID'S COUNSEL]: All right. Why did you want to do that?
 

 [REID]: So they can be taken care of.
 

 [REID'S COUNSEL]: All right. Did you ever have the opportunity to say well, I didn't work as many hours this week, can you not take the money out?
 

 [REID]: I did not.
 

 [REID'S COUNSEL]: Would your hours on your jobs fluctuate-
 

 [REID]: They did.
 

 [REID'S COUNSEL]: For the type of work you did?
 

 [REID]: They did.
 

 ....
 

 [REID'S COUNSEL]: In your file, is [sic] 14 jobs listed?
 

 [REID]: Yes, sir.
 

 ....
 

 [REID'S COUNSEL]: Now at this point, when you work, money's coming out of your check?
 

 [REID]: Yes.
 

 [REID'S COUNSEL]: Did you ever try to have the payroll deduction stopped?
 

 [REID]: No.
 
 [5]
 

 Thus, the jury had the opportunity to consider all of the relevant evidence on this issue and come to its own conclusion regarding Reid's
 
 *58
 
 compliance with his child support obligations. Accordingly, we cannot say that the trial court reversibly erred in declining to give Shearin's requested jury instruction regarding the effect of the 8 November 2005 order.
 

 Conclusion
 

 For the reasons stated above, we conclude that Shearin has failed to demonstrate her entitlement to relief under Rule 59. Therefore, we affirm the trial court's 24 October 2016 order.
 

 AFFIRMED.
 

 Judges ZACHARY and BERGER concur.
 

 [1]
 

 The parties refer to this order in their briefs as the "October 27, 2005" order, presumably because that is the date on which the hearing leading to the entry of the order took place.
 

 [2]
 

 Indeed, Judge Hinnant informed counsel at the hearing on this motion that in "the campaign for this particular position ... the Court was unopposed[.]"
 

 [3]
 

 On 1 November 2016, Shearin filed a document captioned "Notice of Objection to the Order." She attached as exhibits to this document three photographs purportedly depicting Judge Hinnant interacting with Reid's counsel and his family members at a social gathering. These photographs were submitted after the trial court's denial of Shearin's post-trial motions. Moreover, no attempt was made to authenticate or provide context for the photographs. Therefore, we do not consider them.
 

 [4]
 

 No legal authority is cited in Shearin's brief to support her alternative contention that the trial court erred in denying her counsel's request to quote the language from
 
 McKinney
 
 regarding legislative intent during his closing argument. Instead, her brief merely states that the request was denied "without sufficient explanation." Therefore, we deem this argument abandoned pursuant to Appellate Rule 28(b)(6).
 

 [5]
 

 We note that the trial transcript does not indicate that Shearin ever objected to this testimony.